101 N.J. Super. 43 (1968)
242 A.2d 888
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JOYCE HAND, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided April 26, 1968.
*47 Mr. John J. Gillies, Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Seymour Rudenstein for defendant (Messrs. Mellinger & Rudenstein, attorneys; Miss Bette Watnik, on the brief).
YANCEY, J.C.C.
This is a timely motion to suppress evidence, pursuant to R.R. 3:2A-6. The facts as elicited in testimony are as follows:
On March 14, 1967 two detectives of the Orange Police Department were informed by telephone by a sergeant that a Mr. Williams had phoned and reported that a man had offered to sell him a "hot" Royal electric typewriter. Williams gave the license number of a car involved, and the detectives *48 were told by the sergeant that the license number was in the name of Wayne Lenhart of Orange. The detectives went to Lenhart's address and were told by Lenhart that a Thomas Hand  whom they knew to be a registered narcotic addict  had the typewriter. Lenhart went with the detectives to show them where Hand lived. Detective Paglucci testified that he did not apply for a search warrant because he feared Mrs. Lenhart would have phoned Hand and the typewriter would have been removed.
Detective Paglucci testified that he, his partner Detective Butler and Lenhart arrived at 310 Lincoln Avenue, Orange, at about noon. They rang the downstairs bell and were admitted by the caretaker, who took them to Hand's apartment on the third floor. Detective Paglucci said he knocked on the door and a male voice asked, "Who's there?" A man opened the door about three-fourths of the way or about two feet. "Police," Paglucci said he answered. He testified that he had his foot nearly in the doorway as he showed the man  whom he knew to be Thomas Hand  his badge. At this point, while still in the hallway, Detective Paglucci said he saw a typewriter on the floor in a closet in the apartment. The closet was about six feet away from him and had no doors. "I walked in," Detective Paglucci said, and asked Hand where he got the typewriter.[1] Thomas Hand was arrested and charged with receiving stolen property. He and the typewriter were taken to Orange Police Headquarters, where identification of the typewriter as stolen was completed with the aid of a representative of the manufacturer.
Also in Thomas Hand's apartment, when the detectives entered, was defendant Joyce Hand, his wife, whom the police also knew was a narcotics addict. Mrs. Hand was told by the *49 detectives that she would have to come with them, that she would be a material witness. However, about 25 minutes after getting to the station house, she was examined by a doctor. Detective Paglucci said he had radioed ahead and asked that doctor be summoned. The doctor told her she did not have to consent to the examination. Even though she said she would rather have her own doctor examine her (she thought she was pregnant), the police doctor proceeded anyway. As a result of his findings Joyce Hand was charged that day with being under the influence of narcotics, in violation of N.J.S. 2A:170-8. She was taken before a magistrate the next day.
Defendant Joyce Hand brings this motion to suppress evidence, contending that the examination by the doctor was a search, her arrest as a material witness was invalid and improper, and the search was invalid since it followed an illegal arrest.
Under the circumstances, it is conceivable that defendant might be a material witness within the ambit of N.J.S. 2A:162-2. Thomas Hand was arrested for a "crime punishable by death or imprisonment in the state prison" and Joyce Hand was a "person who can give testimony against any person so accused of any such crime."
The statute places with a judge or magistrate the decision as to whether the testimony a witness may give is sufficiently material to warrant binding the witness "by recognizance with sufficient surety." The fact that Mrs. Hand was not taken before the nearest available magistrate until some 26 hours after her arrest, contrary to the direction of R.R. 3:2-3(a), does not necessarily make the arrest illegal or evidence obtained after the arrest inadmissible. State v. Hodgson, 44 N.J. 151, 157 (1965); State v. Jackson, 43 N.J. 148, 167-168 (1964); State v. LaPierre, 39 N.J. 156, 171 (1963).
Defendant in her brief points to the second paragraph of N.J.S. 2A:162-3, which deals with the detention of witnesses. It provides in part: *50 "Any person committed or detained as a witness shall not be kept in the same apartment with or be provided with the same fare as persons charged with or convicted of crime * * *"
Without doubt, defendant was detained in the same facilities employed for persons accused of crimes. However, 25 minutes after she arrived at the Orange police station  or shortly thereafter when the doctor reported his findings  defendant was a person accused of a crime.
Defendant also points to N.J.S. 2A:84A-17(2) (Rule 23 of New Jersey Rules of Evidence): "The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, * * *."
Neither at the time Joyce Hand was taken into custody nor at any time thereafter did Mr. or Mrs. Hand consent to Joyce testifying against Mr. Hand. It should be noted that the consent of both is required before the spouse of the accused can testify. Defendant notes that N.J.S. 2A: 162-2 only provides for the detention of a "person who can give testimony."
However, Rule 23 appears to deal with the admissibility of testimony at trial rather than the capacity of the spouse to testify. Mrs. Hand could testify against her husband if both she and her husband consented. Unlikely as it may be that both would consent to waive the Rule 23 privilege, it does not appear to be the arresting officer's duty to attempt to obtain such waivers. Thus the failure of the arresting officer to determine whether Mrs. Hand would or could be a witness does not in itself invalidate her arrest as a material witness.
Defendant suggests that although the arresting officer told Mrs. Hand that she was to be a material witness, the officer never really intended to arrest her for that purpose, but instead perpetrated a ruse to enable a doctor to examine Mrs. Hand. This brings us to the area that greatly concerned this court. Extensive research has revealed no case *51 law on the authority of a police officer to arrest a suspected material witness without a warrant.
The right of parties to a legal proceeding to obtain pertinent testimony from witnesses has long been established. Any personal sacrifice by the witness is a part of his necessary contribution to the welfare of the public. Although the duty to appear and testify is at times onerous, it is necessary to the administration of justice according to the forms and modes established in our system of government. Wilson v. United States, 221 U.S. 361, 372, 31 S.Ct. 538, 55 L.Ed. 771 (1911), quoting Lord Ellenborough. Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 63 L.Ed. 979 (1918).
"The common law did not recognize any authority to confine a material witness, and such authority existing today is purely statutory. A court at common law could require a witness to enter into a recognizance, but he could not be required to provide a surety. `Confining Material Witnesses in Criminal Cases,' 20 Washington and Lee L.R. 164 (1963).
"By the Statutes of Philip and Mary, referred to in Chitty's Criminal Law, Page 61 (marginal page 90) * * * authority is conferred on the magistrate to recognize witnesses to attend at a future time in court, but nothing is said about requiring security of them." Bickley v. Commonwealth, 25 Ky. (2 J.J. Mar.) 572, 574 (Ct. App. 1829).
See also Comfort v. Kittle, 81 Iowa 179, 46 N.W. 988 (Sup. Ct. 1890).
When witnesses were instructed to report to testify at a trial under the old common law, this apparently was accomplished by means of a summons, enforced by the court's contempt power rather than by arrest. See "Material Witnesses in Criminal Proceedings: Securing and Assuring Their Attendance," 18 Mo. L.R. 38 (1953). This common law method of securing testimony from witnesses has been compounded by several statutes.
For actions arising in federal courts, a statute, 18 U.S.C., § 659, provides that any federal judge, on application of the district attorney and being satisfied by proof that any *52 person is a competent and necessary witness in a criminal proceeding in which the United States is a party or interested, may have such person brought before him by a warrant of arrest to give recognizance, and that such person may be confined until removed for the purpose of giving his testimony or until he gives the recognizance required by said judge. "The constitutionality of this statute apparently has never been doubted. Similar statutes exist in many of the states and have been enforced without question." Barry v. United States ex rel. Cunningham, 279 U.S. 597, 616, 617, 49 S.Ct. 452, 73 L.Ed. 867 (1928). See State ex rel. Howard v. Grace, 18 Minn. 398 Sup. Ct. (1898).
Although it might be pointed out that federal crimes are of a different nature than those that confront municipal police officers, section 618-b of the New York Code of Criminal Procedure is substantially the same as the federal statute:
"Whenever a judge of a court of record in this state is satisfied, by proof on oath, that a person residing or being in this state is a necessary and material witness for the people in a criminal action or proceeding pending in any of the courts of this state, he may, after an opportunity has been given to such person to appear before such judge and be heard in opposition thereto, order such person to enter into a written undertaking, with such sureties and in such sum as he may deem proper, to the effect that he will appear and testify at the court in which such action or proceeding may be heard or tried, and upon his neglect or refusal to comply with the order for that purpose, the judge must commit him to such place, other than a state prison, as he may deem proper, until he comply or be legally discharged. * * *"
In New Jersey the only statutes dealing with material witnesses are the aforementioned N.J.S. 2A:162-2 and 2A:162-3.
N.J.S. 2A:162-2 states:
"Every judge and magistrate shall, when in his judgment the ends of justice so require, find by recognizance, with sufficient surety, any person who shall declare against another person for any crime punishable by death or imprisonment in the state prison, or any person who can give testimony against any person so accused of *53 any such crime, whether the offender be arrested, imprisoned, bailed or not."
R.R. 3:9-4 is almost precisely the same in content.
N.J.S. 2A:162-3 states:
"No person shall be committed to or detained in jail to secure his appearance as a witness against any person charged with a crime, except such crimes as are punishable by death or imprisonment in the state prison, whether the offender be arrested, imprisoned, bailed or not."
A second paragraph provides that such witnesses shall not be housed or treated the same as persons accused of crime.
As can easily be seen, these two statutes do not deal with apprehension of material witnesses. Thus, it cannot be said that they require that material witnesses only be arrested after a warrant has been issued.
When the validity of a search rests upon an arrest, or when the arrest itself is in question, the lawfulness of the arrest is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726, 739-741 (1963). In State v. Smith, 37 N.J. 481, 494 (1962), Chief Justice Weintraub noted that although New Jersey has sundry statutes dealing with arrest, it does not have a comprehensive one. He suggested that with the advent of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), legislative consideration would indeed be appropriate. Since that consideration has not yet occurred, the common law of arrest still exists in New Jersey. State v. Fair, 45 N.J. 77, 86 (1965). State v. Mpetas, 79 N.J. Super. 202, 207 (App. Div. 1963), citing State v. Smith, supra, 37 N.J., at pp. 493-494.
"The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the time have not so changed as to make further application of it the instrument of injustice." Long v. *54 Landy, 35 N.J. 44, 51 (1961), quoting State v. Culver, 23 N.J. 495, 505 (1957).
It has been held that where no New Jersey court of higher jurisdiction had expressly applied or approved a common law rule and the rule had not been declared by legislative enactment, the court was free to examine the question of the continued justification of the rule as a part of New Jersey's nonstatutory law. State v. Koonce, 89 N.J. Super. 169, 180 (App. Div. 1965). In recent decisions our courts have repeatedly acknowledged that public policy is the dominant factor in the molding and remolding of common law principles to the end that they may soundly serve the public welfare and the true interests of justice. Falcone v. Middlesex County Medical Society, 34 N.J. 582, 589 (1961), and cases cited therein.
Even in this day of increasing availability of scientific evidence, witnesses are still important in proving violations of criminal laws. In proving some types of criminal activity, they are vital. At the same time, it must be noted that individuals have not significantly changed in regard to their reluctance to become involved as adjuncts to the judicial process. What has changed, if anything, in the last 40 years, is that our population has become intensely mobile. People commute great distances to work, move their residences frequently and travel often and far for entertainment and vacation. In the face of this swift movement from one area to another, if a police officer cannot immediately hold the man who has seen a crime but is reluctant to cooperate, he is faced with the possible loss of the witness[2] or a possible delay in obtaining information that might lead to apprehension of the suspect closer in time to the crime and before incriminating *55 evidence can be disposed. Causing a police officer to take the name and address of a reluctant witness and then to go to court to get a warrant in every instance would just be one more advantage for the criminal. On the other hand, if a reluctant witness can be taken into custody on the spot, he would be, in the opinion of this court, less likely to withhold cooperation. Thus, there appears to be good reason to allow arrest of a material witness without a warrant in some cases.
This, of course, is nothing new, since police apparently have been making such arrests for years. As in any other arrest without a warrant, such action might be accepted because a magistrate will review the arrest and determine under what conditions, if any, jurisdiction will be retained. N.J.S. 2A:162-2. However, police should not be permitted to arrest persons as material witnesses on no basis whatsoever, particularly since there will be instances, such as the case at bar, when police will want to justify an in-custody search as being incident to a valid arrest. Since a search of the person without a search warrant incident to an arrest is permitted for the protection of the police, State v. Mark, 46 N.J. 262, 271-2 (1966), it would not seem reasonable to prohibit a search of a person arrested as a material witness.[3] Rather, if the arrest is well founded and rests on a valid basis, there should be no reason to exclude the findings of an incidental search of a person in custody. At the same time, any danger of the use of the material witness arrest in place of dragnet arrests or to justify searches will be minimized.
Under the common law of New Jersey, a peace officer has authority to arrest without a warrant when he has a reasonable basis or probable cause to believe a crime punishable *56 by imprisonment for more than one year has been committed, or has witnessed the commission of a disorderly conduct or traffic violation. State v. Burnett, 42 N.J. 377 (1964); State v. Doyle, 42 N.J. 334 (1964). In adapting these requirements to the arrest of a possible material witness, it would be overly restrictive to require the officer in every instance to have first-hand knowledge that a person could be a material witness. It is very likely that an officer will arrive on the scene and be told by a bystander that a certain person, since departed, said he had seen the entire crime. The officer would be expected to locate the alleged witness and to do so without delay if no suspect had been apprehended. If the officer finds the alleged witness with his luggage packed, he would want to be able to arrest the alleged witness immediately for appearance before a magistrate. To require the officer to leave to get a warrant would unreasonably frustrate his efforts. The possible witness who would shirk his duties as a citizen would benefit at the expense of effective law enforcement. Cf. State v. Davis, 50 N.J. 16 (1967).
Thus, this court construes the common law to be that a peace officer may arrest without a warrant when he has a reasonable basis or probable cause to believe a person is a necessary and material witness to a crime punishable by imprisonment for more than one year and that person might be unavailable for service of subpoena.
A word is in order about the additional requirement that the officer reasonably believe that the alleged witness not only is a material one but also a necessary one. It is, in the opinion of this court, not sufficient for an arrest without a warrant that a person might be a witness to material aspects of a crime. The officer should reasonably believe that the alleged witness can give testimony which is essential to the State.
If additional unessential testimony is desired by the prosecutor, and if he believes the possible witness will not respond to a subpoena, a warrant should be obtained and *57 a hearing held in accordance with N.J.S. 2A: 162-2. It should be noted that the scope of N.J.S. 2A:162-2 is slightly broader than that of the common law rule here enunciated. N.J.S. 2A:162-2 applies to "any person who can give testimony", while the common rule only encompasses "necessary and material" witnesses who might be unavailable.[4] Underlying this distinction is this court's belief that a citizen who may be of help in enforcing the law and manifests cooperation should not, without more, be subjected to forcible arrest, a probable night in jail and an arrest record.
Thus, if two persons both allegedly witness a crime and one comes forward and cooperates while the other does not, an officer would not be justified in placing the second immediately under arrest instead of merely taking the person's name and address. This is even more compelling if there might be 10 or 20 possible witnesses.
However, if the officer has reason to believe that the second person also is necessary  perhaps the cooperating witness is not coherent, is self-contradictory, is a known prevaricator or is just not helpful  and might not be available (perhaps he has no roots in the jurisdiction)  there is nothing in the common law rule which precludes the officer from taking the second uncooperative possible witness into custody without a warrant.
Requiring the arresting officer to form an opinion on the potential availability of a possible witness, as well as his necessity to the criminal proceeding, is not asking too much of the officer. As the court stated in State v. Taylor, 81 N.J. Super. 296 (App. Div. 1963):
"The controlling cases demonstrate that the making by the arresting and searching officers of a subjective judgment of the existence of probable cause in relation to the crime hypothesized [here being a material witness] is essential to a legal search [here an arrest] without a warrant." (at p. 309)
*58 And the factors of availability and necessity to the proceeding are the same ones that the magistrate will consider in determining whether to place a person in recognizance as a material witness. The court state in Taylor:
"It is plain that the legality of the search without a warrant is predicated upon the officers themselves making the considered `judgment' of the existence of probable cause as to the crime hypothesized, in the place of the judicial officer who makes that judgment from the proofs submitted to him where a search warrant is applied for, see State v. Macri, supra, (39 N.J. 250, at p. 257) the particular circumstances excusing the officers from obtaining the warrant in advance of the search. See also State v. Klein, 79 N.J. Super. 559, 566 (App. Div. 1963)." (81 N.J. Super., at pp. 309-310)
In the case at bar there is no evidence that the arresting officer believed that defendant would be unavailable for service of a subpoena if she was needed in the prosecution. Also, it is extremely doubtful that the arresting officer could have believed that defendant was a necessary witness in a prosecution of Thomas Hand for possession of stolen goods. Both officers themselves witnessed the presence of the typewriter in the apartment.
There is also an additional basis on which this court can reach its decision. As the United States Supreme Court declared in United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932), "an arrest may not be used as a pretext to search for evidence." MacKnight v. United States, 87 U.S. App. D.C. 151, 183 F.2d 977 (D.C. Cir. 1950); Barnes v. State, 25 Wis.2d 116, 130 N.W.2d 264, (Sup. Ct. 1964); Prather v. State, Fla. App., 182 So.2d 273 (App. Ct. 1966). In State v. Taylor, supra, 81 N.J. Super., at p. 310, the court recognized cases to the effect that "where the purpose of the officers is to search for evidence of crime and not to arrest the defendant on the basis of what is known before the search, a search without a warrant is unlawful, and the unlawfulness is not cured by the incriminating results of the search. [Citations omitted]"
*59 "But whether the search was the primary objective or a mere incident necessarily turns upon the facts and particularly upon the inferences to be drawn from the facts established. Necessarily such subjective elements as intent and purpose are matters of inference and thus issues of fact." People v. Magidson, 232 Cal. App.2d 1, 42 Cal. Rptr. 408, 409 (Sup. Ct. 1965).
In this case the officers knew defendant was a narcotics addict, gave no indication in their testimony of anything else that caused them to believe defendant was under the influence of narcotics, testified to no change of opinion regarding defendant's condition while en route to the police station, radioed for a police doctor before arriving at the station, and never brought defendant before a magistrate for determination of whether she should be held in recognizance as a material witness.[5]
The fact that nothing ever came of defendant's arrest as a material witness is not by itself conclusive one way of the other. However, it is of "substantial probative significance" and at least supports the view that probable cause in respect to defendant's position as a material witness never existed. State v. Taylor, supra, 81 N.J. Super., at pp. 308-309. Cf. DePater v. United States, 34 F.2d 275, 276, 74 A.L.R. 1413 (4 Cir. 1929): "In passing upon the question of whether the search was legal or reasonable the court cannot escape drawing certain conclusions from the course pursued by the officers themselves."
After due consideration of the circumstances, observation of the witnesses and evaluation of their testimony, this court is satisfied, and finds as a fact, that the officers did not actually intend to arrest defendant as a material witness. Their purpose throughout was to get defendant in a position *60 which might justify a physical examination. (It is not necessary to explore the question of whether an examination by a doctor is a reasonable search necessary for the protection of the police.)
It cannot be doubted that such an examination is a search within the meaning of the Fourth Amendment. Schmerber v. State of California, 384 U.S. 757, 766-770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). State v. Swiderski, 94 N.J. Super. 14 (App. Div. 1967).
Hence the search at the police station was invalid because the arrest was invalid. Mapp v. Ohio, supra. The arrest was invalid because the officers did not have probable cause to believe defendant was a necessary and material witness who might become unavailable to service by subpoena, and also because they did not in fact intend to arrest defendant as a material witness.
Accordingly, defendant's motion to suppress all evidence procured of seized is hereby granted.
NOTES
[1] Where there is probable cause to make an arrest without a warrant, there is justification for at least a peaceable entry of accused's home by police to make the arrest. Washington v. United States, 105 U.S. App. D.C. 58, 263 F.2d 742, certiorari denied 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (C.A.D.C. 1959).
[2] In addition to the District of Columbia, Puerto Rico, Virgin Islands and Panama Canal Zone, by 1965 45 states had passed the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. 9 U.L.A., 1965 pocket part, p. 47. As of 1965, Alabama, Georgia, Hawaii, Iowa and Michigan had not adopted the act.
[3] A proceeding to hold a person as a material witness would seem to be a criminal proceeding rather than a civil. N.J.S. 2A:162-2 as amended and N.J.S. 2A:162-3 are contained in chapter 11 of Title 2A, "Criminal Procedure". Cf. People on Complaint of ____ v. Doe, 261 App. Div. 504, 26 N.Y.S.2d 458 (App. Div. 1941).
[4] Both apply whether the offender is arrested or not.
[5] "There is no statute which prohibits, and as far as I am aware, no judicial fiat which indicates that a person may not at the same time be held as a defendant in a criminal prosecution and as a necessary and material witness in another criminal action or proceeding." People ex rel. Gross v. Sheriff of City of New York, 277 App. Div. 546, 101 N.Y.S.2d 271, 274 (App. Div. 1951), affirmed 302 N.Y. 173, 96 N.E.2d 763 (Ct. App. 1951).