108 N.J. Super. 272 (1970)
260 A.2d 877
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROY PRICE, DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Decided January 6, 1970.
*276 Mr. Giacomo Rosati, Assistant Prosecutor appeared for plaintiff (Mr. Vincent Panaro, Prosecutor of Mercer County, attorney).
Mr. John Wherry, Assistant Public Defender appeared for defendant (Mr. Charles Popkin, Public Defender, attorney).
BENNETT, J.S.C. (temporarily assigned)
This case involves two pretrial motions which have been consolidated for purposes of hearing and decision. Indictment No. 813-68 charges defendant Roy Price with murder. The first motion is to dismiss the indictment on the ground that the evidence presented to the grand jury for its consideration was legally insufficient to sustain a true bill. The second motion is to suppress certain evidence seized as a result of a police search of Price's apartment.
An indictment should be quashed only when palpably deficient. State v. Riley, 97 N.J. Super. 542 (Law Div. 1967), cert. den. 390 U.S. 969, 88 S.Ct. 1085, 19 L.Ed.2d 1177 (1968); aff'd. 101 N.J. Super. 402 (App. Div. 1968). The transcript of the grand jury testimony in this case clearly indicates that sufficient evidence was presented to sustain an indictment. Although there was no eyewitness testimony before the grand jury, there was substantial and rationally persuasive circumstantial evidence upon which to find a true bill. Further, it is well established that the grand jury is permitted to both hear and act upon hearsay evidence or even evidence unconstitutionally obtained by the police. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1959); United States v. Blue, 384 U.S. 251; 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). If the evidence is either tainted or incompetent in some fashion, defendant has adequate legal remedies at a later stage in the proceedings against him. While a grand jury cannot be permitted to indict upon mere whim or caprice, it is only required to find that a crime was committed and that the accused person *277 should be required to stand trial on the charge. State v. Riley, supra; Rosetty v. Township Committee of Hamilton Tp., 82 N.J. Super. 340 (Law Div. 1964), aff'd. 96 N.J. Super. 66 (App. Div. 1967). In this case there can be no doubt that the grand jury acted properly in basing its indictment on the evidence presented to it. The motion to dismiss the indictment is denied.
The motion to suppress is somewhat more complex. On April 6, 1969, at approximately 3 A.M., the Trenton police found the victim seriously injured at her home. She died from those injuries some ten hours later. Defendant occasionally performed odd jobs for the deceased woman. A witness placed Price at the scene of the murder for a short time at approximately 4:30 P.M. on April 5. On Monday, April 7, the day following the murder, Price was picked up by the police and transported to headquarters for questioning. In responding to his interrogators, Price allegedly gave confused and conflicting accounts of his whereabouts on the day of the murder. Later that evening the police charged Price as a material witness and held him for appearance in court. At his appearance the following morning the municipal magistrate advised Price of his rights and held him as a material witness on $10,000 bail. Price could not make the bail and was remanded to the Mercer County jail. On April 9, the following day, the police obtained a court order releasing Price into their custody "for the purpose of * * * reenactment of alleged violations of certain criminal statutes." During this "reenactment" Price was escorted to his apartment, where the police entered, searched and then seized a variety of items. The police had not obtained a search warrant. The items seized during the search were sent to the State Police for laboratory tests. On Thursday, April 16, the Trenton police received an unofficial report from the State Police that certain pieces of evidence seized during the search incriminated Price in the murder. The following day, ten days after Price was originally arrested and held as a material witness, he was officially charged with murder.
*278 The State challenges this motion on the ground that it fails to comply with the time requirements of R. 3:5-7(a).
* * * Such motion shall be made within 30 days after the initial plea to the charge unless, the court, for good cause shown, enlarges the time.
There is no dispute that the motion was not filed within the generally applicable 30-day period. This court recognizes that the purpose of the rule is to foster the early resolution of search and seizure questions and fully supports that policy. This court is also aware that both the rule and the case of State v. Raymond, 95 N.J. Super, 175 (App. Div. 1967) place the burden upon a defendant to show good cause for extending the time limit. However, this court is satisfied that the burden has been met here. The Public Defender in this county attempts to investigate proposed motions to suppress before filing, in order to satisfy himself that sound questions of law or fact exist. Since the Public Defender is aided by a limited staff and saddled with an increasingly burdensome case load, this process occasionally requires more time than that generally permitted by the rule. This is not to say that the Public Defender has a right to delay. Rather, the applicable test is reasonableness in light of all the circumstances. State v. Wade, 89 N.J. Super. 139 (App. Div. 1965). This court, considering the nature of this particular case and the complexity of the issues, legal and factual, involved therein, finds that the delay was reasonable and extends the time period of R. 3:5-7 (a). That being so, the motion to suppress is validly made and will be decided on the merits.
The first task in analyzing the issues presented by this motion is to determine the purpose of the material witness procedure. The authority to confine material witnesses appears to have been unknown to the common law. 20 Wash. & Lee L. Rev. 164 (1963). The earliest statement of the procedure appears in an English statute, 2 & 3 Philip and Mary, c. 10 (1555), which is cited at 7 Catholic U.L. Rev. 37, 38 (1958):
*279 * * * the said Justices shall have Authority * * * to bind all such by Recognizance * * * as do declare any Thing material to prove the said Manslaughter or Felony against such Prisoner * * * to appear * * * where the Trial * * * shall be, then and there to give Evidence against the Party.
The material witness procedure, then, was originally designed to provide a means to insure that a witness who had vital information to give against one accused of crime would appear at the trial to testify.
In New Jersey the basic authorization for holding a person as a material witness is also statutory. N.J.S. 2A:162-2 provides:
Every judge and magistrate shall, when in his judgment the ends of justice so require, bind by recognizance, with sufficient surety, any person who shall declare against another person for any crime punishable by death or imprisonment in the state prison, or any person who can give testimony against any person so accused of any such crime, whether the offender be arrested, imprisoned, bailed or not.
Its associated statute, N.J.S. 2A:162-3, provides:
No person shall be committed to or detained in jail to secure his appearance as a witness against any person charged with a crime, except such crimes as are punishable by death or imprisonment in the state prison, whether the offender be arrested, imprisoned, bailed or not.
Any person committed or detained as a witness shall not be kept in the same apartment with or be provided with the same fare as persons charged with or convicted of crime. The board of freeholders of each county shall take care that all persons committed or detained as witnesses shall be comfortably lodged and provided for, and not further restricted of their liberty than is necessary for their detention.
New Jersey also has a court rule, R. 3:26-3, on the subject of material witnesses, obviously based upon the above-quoted statutory provisions:
Every judge shall, when the interest of justice requires, bind with sufficient surety all persons who can give testimony against one accused of crime punishable by death or by imprisonment in state prison, whether or not the offender is arrested, imprisoned or bailed.
*280 It is noteworthy that the New Jersey provisions authorizing the binding by recognizance of material witnesses follow both the pattern and the purpose of the 1555 English statute by limiting use of the procedure to those cases where the person held has testimony to give against another person. It is also to be noted that the words "when the interest of justice requires" are designed in this statute to further limit the applicability of the procedure to those cases where the evidence possessed by the witness is important and the witness is unlikely to appear for trial without surety. In the instant case the police testified that they were aware of no evidence against any other person at the time defendant was charged as a material witness. In this regard the grand jury testimony of the police is enlightening. At page five of the transcript, the following statement appears:
Now we receive 15, 20 different stories. We figured at that time, he must know something about this case. Although, not a suspect at that time. He must know something that we want to know. He was placed under arrest at that time as a material witness.
Thus, the police not only failed to have an offender for Price to testify against, but only had a suspicion that he could provide any material information at all. Furthermore, all of the persuasive evidence in this case indicates that if, as the police claim, Price was not a murder suspect when charged as a material witness, he was, at least, a possible suspect. The strictly limited procedure authorized by New Jersey law was not intended to allow the detention of possible suspects on the mere suspicion that they know something. If there was sufficient evidence against Price when originally arrested, he should have been charged with murder at that time. If, as appears, there was insufficient evidence, Price should have been released after initial interrogation and not held as a material witness against a hypothetcial offender while the investigation focused on him. This conclusion is strengthened by a New York decision interpreting their material witness *281 statute. Section 618-b of the New York Code of Criminal Procedure reads as follows:
Whenever a judge * * * is satisfied, by proof on oath, that a person * * * is a necessary and material witness for the people in a criminal action or proceeding pending in any of the courts of this state, he may, after an opportunity has been given to such person to appear * * * and be heard in opposition thereto, order such person to enter upon a written undertaking, with * * * sureties * * * and upon his neglect or refusal to comply * * * the judge may commit him * * *.
While this court recognizes that the terminology of this statute differs from that of New Jersey, it is clear that the underlying purpose of each is identical. New York requires that a criminal action be pending in order to hold a material witness. However, New York courts have liberally construed this language to include the filing of an information or indictment, and even the holding of a grand jury hearing. 5 Syracuse L. Rev. 213 (1954). Yet, in People ex rel. Van Der Beek v. McCloskey, 18 A.D.2d 205, 238 N.Y.S.2d 676, 682 (1963), the New York court clearly held that the purpose of the material witness statute did not extend to the detention of potential defendants under investigation.
We have already alluded to the necessity for strict compliance with the provisions of section 618-b. * * *. The detention of a prospective material witness can serve a salutary purpose. However, the privilege granted by section 618-b may be abused if the procedure is used as a ruse to interrogate or hold a prospective defendant. * * * At a hearing, under section 618-b, it would thus be appropriate, among other things, to raise the question as to whether the real purpose of the proceeding is to inquire into the person's participation in a crime, rather than to hold him as a material witness to its commission.
It is apparent that Price was, in fact, held to inquire into his possible criminality rather than as a witness against another. There seems to be no reasonable interpretation of the New Jersey law concerning material witnesses consistent with the limited scope of the enabling language and the generally accepted purpose of the procedure giving the police jurisdiction to hold a potential defendant as a material *282 witness. That being so, it is incumbent upon this court to find that the arrest and incarceration of Price as a material witness was illegal.
However, this finding does not end the inquiry. The fact that Price was illegally arrested and detained need not bear any necessary relationship to the evidence intended for use against him. In order to find some taint under the "fruit of the poisonous tree" doctrine, one must find that the illegality caused some later prejudice. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In this case, the police obtained the challenged evidence by conducting a search of defendant's apartment without the authorization of a search warrant. Since defendant had been arrested and held in police custody for more than a day before the search took place, it cannot be justified as either incident to an arrest or falling under an exigent circumstances rule. See State v. Naturile, 83 N.J. Super. 563 (App. Div. 1964), and cases cited therein. Thus, the validity of the police search rests upon the consent of defendant himself. If the consent was, in fact, voluntarily given, the illegal arrest and incarceration provides no bar to the admissibility of the evidence seized during the search. It is clearly established in New Jersey that determining the voluntariness of consent to a search is a factual issue to be decided by the hearing judge. See State v. King, 44 N.J. 346 (1965), and cases cited therein. It is also well settled that the burden of proof is on the State to demonstrate, by clear and positive testimony, defendant's unequivocal and specific consent freely and intelligently given. State v. King, supra; State v. Gaudiosi, 97 N.J. Super. 565 (App. Div. 1967).
The grand jury testimony of the police is again illuminating, this time on the subject of voluntary consent. At page seven of the transcript, one reads the following:
Now, to know this man, to speak with this man, it has to be realized he's very, very low mentality * * * He didn't try to explain anything at all. In other words, he would go along. You can suggest to him, which we didn't do, but it was obvious that we could.
*283 In light of this description, it is necessary carefully to scrutinize the circumstances under which the consent is claimed to have been given. It will be recalled that after Price had spent approximately two days in legal custody, the police sought and obtained a court order releasing him from jail for the purpose of a "reenactment." Price was escorted to various places in Trenton by the police, ostensibly in order to check out his confusing and contradictory stories. One of those stops was at Price's apartment where the search and seizure took place. The police testified that they asked Price if they could enter and that he assented. However, the police admitted that Price never gave any explicit statement of consent to a search, even though he never remonstrated with them in any way. Price testified that he had no idea why the police desired to enter his apartment.
This court finds several important factors in deciding the validity of the search in question. First, there is no convincing evidence that Price was informed or was aware that the police intended to search his apartment. Second, if there was any consent at all in this case, it was tacit in nature and not evidenced by explicit statements or acts consistent with knowing and voluntary consent to a search. Third, the search did not occur in a setting devoid of implied coercion. Price was in police custody, reenacting his whereabouts on the day of the alleged crime at their instance and under their direction and control. Fourth, Price is, by police admission, a man who is easily led and subject to suggestion by others. Fifth, neither the reenactment nor the search could have occurred in this fashion if Price had not been illegally arrested and detained as a material witness. It cannot be forgotten that the police could have obtained a search warrant but did not. With all of these factors, it is impossible for this court to find that the State has met its heavy burden of proof by clearly demonstrating that Price freely, clearly, intelligently and voluntarily consented to the search of his apartment. This court does not find that Price was overtly coerced by the police or that he was deliberately tricked or *284 manipulated by them. However, a man who is admittedly easy to lead is likely to be affected by coercive circumstances as well as by verbal suggestion of a more direct nature. Even if there was a tacit consent to the entry and search of his apartment, under the circumstances of this case it was the inevitable result of the situation under which it was obtained, the implied coercion of an illegal arrest, incarceration and investigation, rather than a purely voluntary act. Thus any such tacit consent constitutes the fruit of those illegal acts and must be disregarded.
Since the police failed to obtain a search warrant, and the consent upon which they relied to justify the search was invalid, there is no remaining principle of our law upon which the search of defendant's apartment can be upheld. In such a case, defendant's motion is granted and all evidence obtained as a result of the search in question is suppressed.