238 N.J. Super. 367 (1989)
569 A.2d 894
STATE OF NEW JERSEY, PLAINTIFF,
v.
JANOS MISIK, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided June 23, 1989.
*370 Alan L. Zegas for defendant.
Raymond F. Flood (appearing for the firm of Weissbard & Wiewiorka, attorneys) on behalf of the Association of Criminal Defense Lawyers of New Jersey as amicus curiae.
Nanette Clinch, Special Deputy Attorney General (Acting Assistant Prosecutor) on behalf of the State of New Jersey.

QUASI-CRIMINAL ACTION OPINION
EICHEN, J.S.C.
The primary and novel issue in this case is whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution requires notice and an opportunity to be heard before a person believed to be a material witness may be arrested or detained. In addition, the court addresses the issue of whether a pending criminal action is required under the statute before a material witness may be apprehended or detained.

*371 I PRELIMINARY STATEMENT
In this action, the court issued a warrant for the arrest of Janos Misik ("Misik") as a material witness pursuant to N.J.S.A. 2A:162-2 et seq., the so-called "Material Witness" statute, based on an ex parte affidavit and complaint made by a detective of the New Jersey State Police alleging that Misik had essential and material knowledge concerning the commission of certain environmental crimes and that his arrest was necessary because, allegedly, he would not be available for service of a subpoena.
The affidavit contained the following allegations in support of the issuance of the warrant: that Misik had important information connecting his employer, Petro King Terminal Corporation, with certain pollution violations, which involved the leaking of a petroleum product into the Hackensack River; that although initially Misik had been cooperative with the police, he subsequently failed to keep an appointment for questioning by the prosecutor; that Misik was a foreigner, suspected of illegal alien status because he had once failed to produce his "green card" to the police; that Misik lived on a boat on the Hackensack River which displayed a "for sale" sign; that the information provided by Misik as to the exact location of the boat in the marina had been erroneous; and, finally, that Misik had a criminal record for drug offenses.
At the time of the ex parte application, no criminal action or proceeding of any kind had been commenced by the State against Petro King Terminal Corporation or anyone else.
After reviewing the statute and pleadings (no brief was submitted), the court had an in camera discussion with the assistant prosecutor concerning the basis of the State's authority to obtain an ex parte warrant for the arrest of Misik. The assistant prosecutor submitted that the State had authority to arrest Misik as a material witness even without a warrant so long as it could demonstrate probable cause for the arrest and even though the State had not yet filed criminal charges *372 against Misik's employer.[1] In addition the assistant prosecutor urged as a basis for the warrant the State's need to take a statement from Misik in order to prepare its case for the grand jury, which had not yet been convened for that purpose. As the result of the foregoing, the court issued the warrant, which authorized the police to arrest Misik and directed that he be brought before the court so that the court could advise him of the nature and purpose of the proceedings and his rights in connection therewith. The court further ordered the warrant to be returned to the court by 9:00 a.m. the following day in the event Misik had not yet been apprehended.
Misik was arrested the same day as the warrant was issued, but instead of bringing him before the court, Misik was brought to the prosecutor's office and subjected to a lengthy custodial interrogation. Thereafter he was detained overnight in the county jail where apparently he was treated like an ordinary prisoner, contrary to N.J.S.A. 2A:162-3. The next morning, at approximately 9:00 a.m., Misik was brought before the court, handcuffed and in prison garb. He was, however, accompanied by an attorney, who rightfully decried the nature of the treatment Misik had received, objected to the procedures adopted by the court in issuing the warrant in the first instance, and requested leave to submit a brief challenging the constitutionality of the statute and the procedures utilized by the State in effecting his arrest.
Following oral argument, the court ordered Misik's release from custody on his own recognizance on condition that he personally report to confirm his whereabouts on a weekly basis to the prosecutor's office for a period of one month. The assistant prosecutor was advised that if during that time the State had not convened a grand jury to investigate the criminal allegations of environmental violations, the reporting condition *373 imposed upon Misik would automatically be discharged. At that time leave was granted to Misik's attorney to file a brief in support of his challenge to the statute and in opposition to the continuation of any restrictions on Misik's personal liberty. Subsequently, the Association of Criminal Defense Lawyers of New Jersey was granted leave to participate as an amicus curiae in the case.
Shortly thereafter, the court heard legal argument on Misik's application to declare the statute unconstitutional at which time, in an apparent effort to render moot the due process issues raised by Misik, the State volunteered its willingness to relinquish its right to enforce the weekly reporting condition and to dismiss the "material witness" complaint.
This opinion supplements the Court's oral decision from the bench regarding the constitutional challenge by Misik on the grounds that he was denied procedural due process of law.

II LEGAL DISCUSSION
The "Material Witness" statute[2] and the Court Rule promulgated *374 thereunder[3] authorizes a judge to require the posting of "sufficient surety" by a person who "shall declare" or who "can give testimony" against an "accused" as a condition for his release if detained or committed as a potential witness. The statute does not define the term "material witness," nor does it contain any standards for determining the circumstances under which such a witness may be arrested. Neither does the statute provide express authority for the arrest or detention of the witness, nor does it set forth any procedures to govern the arrest process, such as notice or an opportunity to be heard in opposition thereto. In fact the statute, which has its origin in a century-old law, see State v. Hand, 101 N.J. Super. at 51, 242 A.2d 888, does not even contain the phrase "material witness." However, according to Hand the power to arrest and detain a material witness is derived from New Jersey's common law of arrest, Id. at 53, 242 A.2d 888, and probably is inferable from the statute itself. See Bacon v. United States, 499 F.2d 933, 937 (9th Cir.1971). In any event, it is clear that courts would be without power to require any kind of surety to secure the appearance of a person as a material witness in the absence of the statute. Id. at 939.
In State v. Price, 108 N.J. Super. 272, 260 A.2d 877 (Law Div. 1970), an attempt was made to judicially create standards for implementing the statute. There, the court interpreted the statutory words "when the interest of justice requires" as intended "to ... limit the applicability of the procedure to those cases where the evidence possessed by the witness is important and the witness is unlikely to appear for trial without surety." Id. at 280, 260 A.2d 877. It further recognized a limitation on the scope and purpose of the statute by observing that police *375 may not hold a potential witness unless there is a pending criminal action against an accused. By contrast, the court in Hand appears to sanction the warrantless arrest and detention of a person believed to be a material witness notwithstanding the absence of any formal criminal charges against an accused. Neither Hand nor Price, however, deal with the question as to whether and to what extent the Due Process Clause of the Fourteenth Amendment applies to the arrest and detention of an alleged "material witness."
In this case, Misik did not present a claim directed to the substantive issue of probable cause and the criteria for determining whether and under what circumstances a potential witness may be arrested or detained. Nevertheless, this court believes that some guidance on this issue is appropriate. First, a careful examination of the express language of the statute compels the conclusion that a criminal action must be pending against an accused before a court may sanction the detention of a person believed to be a "material witness." This conclusion is supported by the use of the word "accused" in the statute as well as the language to the effect that a witness may not be committed or detained in jail as a witness unless a person has been "charged with a crime." N.J.S.A. 2A:162-2. Accordingly the contrary rule in the Hand case as well as the State's argument which relied thereon is rejected.[4] Several states which have considered this question through legislative enactment have recognized the necessity for a pending criminal action before a person may be detained as a "material witness." See, for example, the New York statute, 11A Crim.Proc.Law Sec. 620.10, which requires "a pending criminal action"; the federal act, 18 U.S.C. Sec. 3144, which speaks about the testimony of a person in a "criminal proceeding"; and the Nebraska statute, Neb. Rev. Stat. Sec. 29-507 (1981), which permits detention *376 of a witness against a person accused of a felony. See also Rodriguez v. Sandstrom, 382 So.2d 778 (Fla.App. 1980) (holding that the court lacks inherent or statutory authority to hold a material witness in jail where no charges are pending against any person in the case.)
This court also rejects the State's argument in support of its ex parte application that it needed more time in which to conduct its own investigation before presenting its case to the grand jury which, as indicated above, the State admitted had not yet been convened for that purpose. It is well established that our Rules do not give a prosecutor any pre-trial subpoena power independent of the grand jury. Matter of Nackson, 221 N.J. Super. 187, 205, 534 A.2d 65 (App.Div. 1987), aff'd., 114 N.J. 527, 555 A.2d 1101 (1989); see also State v. Hilltop Private Nursing Home, Inc., 177 N.J. Super. 377, 394-395, 426 A.2d 1041 (App.Div. 1981). Equally understood is the principle that the grand jury process itself may not be used by the prosecutor solely to conduct his own investigation. Durbin v. United States, 221 F.2d 520, 522 (D.C. Cir.1954), cited in Nackson, 221 N.J. Super. at 205, 534 A.2d 65. Moreover, even where our Supreme Court has approved of investigative detention for the purpose of compelling a suspect, not yet accused of a crime, to participate in a line-up, the Court was careful to observe the importance of protecting such a suspect against compelled interrogation. See State v. Hall, 93 N.J. 552, 566, 461 A.2d 1155 (1983).
Here, although initially cooperative, Misik, for whatever reason, apparently decided to reconsider continuing that cooperation. In the absence of a pending grand jury proceeding, or some other criminal action, Misik was free to make that decision, and the State had no right to insist that he continue to cooperate. Thus, it seems that what the prosecutor could not do directly, i.e., obtain a subpoena to compel Misik to submit to interrogation absent a pending grand jury investigation, it succeeded in doing indirectly by obtaining a warrant for Misik's *377 arrest under the guise of the "Material Witness" statute. The obvious unfairness of this situation was further compounded when Misik was not brought immediately before the court following his arrest, but instead was interrogated for hours and then imprisoned overnight at the county jail notwithstanding the warrant commanded he be brought forthwith before the court.
Accordingly the warrant obtained in this case was an oppressive tool which amounted to a clear abuse of the court's process. The fact that Misik became a reluctant witness, refusing to further cooperate with the assistant prosecutor after his initial disclosures, did not give rise to any right on the part of the State to conclude that he would not be available as a witness through a grand jury subpoena at a later time (assuming a grand jury would have been properly convened for this purpose). Thus it was patently unreasonable under the Fourth Amendment of the United States Constitution to have arrested and detained Misik because of this refusal.
In addition to the impropriety of seeking a warrant in the absence of a pending criminal action, Misik's claim that he was denied procedural due process of law by the manner in which the State obtained his detention is a claim with considerable merit. As one federal court noted In the Application of Cochran, 434 F. Supp. 1207, 1216, n. 12 (D.Neb. 1977), "there can be little difference between the questions whether the arrest and detention are reasonable under the Fourth Amendment and whether they comport with the Due Process Clause of the Fourteenth Amendment." Misik was arrested without prior notice and a meaningful opportunity to be heard before he was committed to jail. Essentially the due process issue presented is whether Misik was entitled to a pre-deprivation hearing as to his status as a "material witness," see e.g., Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), or whether, as the State urges, a post-deprivation proceeding is sufficient to satisfy the due process demands of the *378 federal and state constitutions. See e.g., Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
In this regard, the State argues that because Misik ultimately received a copy of the warrant, affidavit and complaint, he, therefore, had the requisite notice, and that Misik would have had an opportunity to be heard at a probable cause hearing to contest the sufficiency of the allegations in the ex parte affidavit had he requested such a hearing. However, that analysis misses the point because Misik already would have been deprived of his personal liberty, and if it had been determined that security for his future appearance would be required pending the probable cause hearing, bail or a "sufficient surety" also might have been imposed. Thus, if he had been financially unable to post such security, he would then have been detained and deprived of his freedom until such a hearing could have been scheduled. And, if he had desired to be represented by an attorney at such a hearing, but could not have afforded one, there being no statutory authority for ordering the appointment of paid counsel, he then would have been compelled to appear to contest the propriety of his arrest and detention without an attorney and without the opportunity for adequate preparation. Such a scenario does not comport with the due process protections afforded by the federal and state constitutions and cannot be condoned except under the most exigent circumstances.
Indeed both New York and the federal government have recognized the deficiencies inherent in the post-deprivation model urged by the State by providing statutory procedural safeguards in their "Material Witness" statutes in order to protect against the possibility of arbitrary governmental intrusion upon an innocent person's liberty. Under the New York statute, although the initiating process is ex parte, there is a preliminary requirement that the government present a "well founded" application to support a charge that a potential witness possesses information material to the determination of a pending criminal action and that such witness will not be amenable or responsive to a subpoena at the time when his attendance is *379 sought. 11A Crim.Proc.Law Sec. 620.20. Moreover, if the application is judged to be sufficient, an order, not a warrant, is entered directing the potential witness to appear for a hearing at a future date to determine whether he is, in fact, a "material witness." 11A Crim.Proc.Law Sec. 620.30. In other words, the New York statute requires notice to be given to an alleged material witness of his right to be heard at a given date prior to his apprehension and possible detention. Accord N.J.S.A. 2A:81-18 et seq. (Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings).
In those extraordinary situations, however, where it is demonstrated that a potential witness is unlikely to respond to a court order or has failed to honor a prior order, the New York statute then permits the court to issue a warrant directing a police officer to take the prospective witness into custody and to bring him forthwith to the court for a hearing to determine his status as a material witness. 11A Crim.Proc.Law Sec. 620.30 2(b). The witness may not be detained, however, without being afforded a prior hearing unless he requests an adjournment, and then only after such request may he be required to post bail or obtain a recognizance with surety. 11A Crim.Proc.Law Sec. 620.40.
Although the federal statute permits an ex parte warrant to issue for the arrest of a potential witness where it is shown that it would be impracticable to secure his appearance through a subpoena, such person may not be detained if he is unable to comply with any condition imposed for his release pending a hearing to determine whether he is, in fact, a "material witness" in the absence of clear and convincing proof that no condition or combination of conditions will reasonably assure the appearance of the person as required. 18 U.S.C. Sec. 3142(e) and (f) and Sec. 3144. In lieu of detention, the statute also provides for the taking of the witness' testimony by deposition if he is unable to meet any condition imposed for his release. 18 U.S.C. Sec. 3144.
*380 By contrast, New Jersey has no procedural safeguards at all for dealing with a potential witness who may have important testimony to give but who may not be amenable or responsive to a subpoena or court order requiring him to appear to give testimony.
In Cochran, a habeas corpus proceeding, the United States District Court was confronted with a constitutional challenge to the Nebraska Material Witness Statute similar to the attack on the New Jersey statute in the instant case. The Nebraska statute then in effect provided as follows:
When the magistrate is satisfied that any witness against the accused will not appear and testify at the trial, he may, when the offense charged is a felony, order him to recognize with sufficient sureties....
Neb. Rev. Stat. Sec. 29-507 (1943).
The court stated in pertinent part as follows:
It cannot be doubted that the Due Process Clause at least requires that formal notice be given to a person against whom the material witness statute is to be applied and that he be afforded a meaningful opportunity to be heard. These procedural safeguards are so fundamental to the concept of due process that their absence is almost certainly a fatal defect when physical liberty is at stake. (Cites omitted.) (434 F. Supp. at 1213.)
While recognizing the obvious deficiencies in the statute by reason of its failure to prescribe any procedure to be followed, the Cochran court, nevertheless, declined to declare the statute unconstitutional. Instead, it prescribed the procedure to be followed before a potential witness can be deprived of his liberty, by requiring at least the following:
1. written notice of the allegations upon which the state relied for its claim of right to require a recognizance or detention and of the time and place of the hearing on those allegations;
2. disclosure at a hearing of the evidence in support of the state's claim;
3. an opportunity to be heard in person and to present witnesses and documentary evidence;
4. to the effect that it is practicable, the right to confront and cross-examine witnesses;
5. a hearing before a magistrate or other judicial officer; and
*381 6. a written statement by the decision maker as to the evidence relied upon and the reasons for any adverse decision.
Id. at 1214.
Although requiring observance of these procedural rights, the Cochran court recognized that the question "[w]hether and to what extent the Due Process Clause of the Fourteenth Amendment applies to the detention of material witnesses has not yet been considered by the Supreme Court of the United States." Id. at 1212. Therefore it arrived at its conclusion to require the above procedural safeguards by applying the balancing test set forth in Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903. That test requires consideration of three factors in making the determination as to whether a hearing is required prior to government action:
[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
Cochran, 434 F. Supp. at 1213 (quoting from Mathews).
Thus, Mathews requires a court to assess two factors on the side of the individual: the importance of the individual liberty at stake and the extent to which the requested procedure may reduce the possibility of erroneous decision-making; on the other side of the "balance" is the government's interest in securing essential testimony for use in criminal proceedings. In applying this test, the court in Cochran easily concluded that an individual's liberty interests are paramount to the government's interests.
That the state's interest in securing essential testimony in criminal trials is important is not to be denied (cite omitted.) However, that interest need not be threatened by procedural protections afforded to the material witness whose liberty is threatened. Whatever safeguards are necessary can be incorporated into the extensive procedures necessarily attendant to the criminal prosecution. Moreover, emergency procedures can be devised to serve the legitimate state interest where flight of the witness is imminent. (434 F. Supp. at 1214) (emphasis added.)
*382 Following the Cochran decision, in 1981 the Nebraska Legislature enacted a statute that incorporated the protections set forth in that case. Neb. Rev. Stat. Sec. 29-508.01 (1981).
The New Jersey "Material Witness" statute, as indicated above, does not contain any procedural safeguards. That is not to say that there would not be common law and constitutional authority to create such safeguards. In a somewhat analogous situation involving the State's right to detain a suspect in a criminal investigation for the purpose of compelling his participation in a line-up, our Supreme Court in State v. Hall, 93 N.J. at 559, 461 A.2d 1155, recognized the judiciary's power to authorize such detention based upon the constitutional authority governing searches and seizures under Article I, Paragraph 7 of the New Jersey Constitution and the Fourth Amendment to the United States Constitution. However, the Court was quick to note that "[w]hen this jurisdiction is invoked, it triggers the judicial responsibility to assess the need advanced by law enforcement for such procedures and to protect the rights of individuals to be free from unreasonable searches and seizures." Ibid. Accordingly, the Court, in Hall, recognized the importance of carefully circumscribing the process involved in such investigatory detentions by requiring adherence to strict procedural protections, stating that "in most cases, the suspect must be given sufficient notice of the proposed detention.... and be given the opportunity to arrange a convenient time for the detention." 93 N.J. at 564-565, 461 A.2d 1155. Nevertheless, the Court, in a footnote, acknowledged that there may be exigent circumstances that will demand prompt police action and that by requiring prior notice to a suspect effective law enforcement might be thwarted. Therefore, the Court indicated that prior judicial authorization need not be an absolute requirement, but cautioned that the State would bear "a heavy burden of proving that the exigent circumstances duly justified dispensing with the required procedures....", 93 N.J. at 565, n. 8, 461 A.2d 1155.
*383 This court believes that at the very least a heavy burden of proof should be imposed upon the State whenever it decides it is necessary to seek detention of an innocent person, not even a suspect, much less an accused. As the United States Supreme Court observed in Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979):
The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring.) The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.
There, the Supreme Court of the United States recognized the importance of establishing a fair procedure for determining whether to commit a person for mental care on an involuntary basis. In so doing, it held that trial courts must employ a clear and convincing standard before such person may be committed, especially where there is the possibility of indeterminate restraint on that person's liberty. Then Chief Justice Burger, writing for a unanimous Court, found that in cases involving individual rights, whether criminal or civil, the standard of proof reflects the value society places on freedom from physical intrusion. 441 U.S. at 426, 99 S.Ct. at 1809. In furtherance of this constitutional principle, the federal "Material Witness" act presumably imposes the clear and convincing standard of proof as a pre-condition for approving the detention of a potential witness. Consequently, the act provides that only when it clearly and convincingly appears at the detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required may the person be held over." See 18 U.S.C. Sec. 3142(e) and (f).
So, whether the issue is framed in terms of the Fourth Amendment guarantee against unreasonable searches and seizures or the Fourteenth Amendment guarantee of due process of law, it is clear that in this case Misik was deprived of his *384 constitutional rights under both the state and federal constitutions. Misik was arrested without prior notice and an opportunity to be heard before he was arrested and committed to jail. The fact that he was released on his own recognizance the next day or that the State may have consented to the discharge of the reporting condition for his release and to the dismissal of the "material witness" complaint does not render the case moot as the State has implied. As the United States Supreme Court has long recognized, "[m]any deep and abiding constitutional problems are encountered primarily at a level of `low visibility' in the criminal process.... We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct." Bacon, 449 F.2d at 936, quoting from Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 1897, 20 L.Ed.2d 917 (1968). Thus, because there still remains in this case as there did in Bacon the possibility of Misik's future detention, such exposure provides a sufficient "collateral consequence" so as to avoid a finding of mootness. Ibid.

III CONCLUSION
Accordingly, based on the foregoing this court finds that facially New Jersey's "Material Witness" statute provides the authority to require a potential witness in a criminal case to make recognizance with sufficient surety in order to secure his future appearance as a witness. The fact that the statute is silent regarding the appropriate procedures required to be followed before such a witness can be legally detained does not necessarily mandate the conclusion that the statute is unconstitutional. See Cochran, 434 F. Supp. at 1216. Obviously the absence of sufficient procedural safeguards is condemned and should be remedied, and this court can do so without declaring the statute void.
*385 Although it would be preferable for our Supreme Court to implement rules or for the legislature to enact additional statutory provisions in order to carry out the mandate of the Due Process Clause of both the federal and state constitutions, neither has done so to date. Nor has any New Jersey case addressed the problems arising out of the lack of such procedural safeguards. Accordingly, and particularly in light of the complexity of the subject matter involved, this court urges that the Criminal Practice Committee of the New Jersey Supreme Court study the issues arising out of the detention of material witnesses for the purpose of creating procedures for implementing the statute. Cf. Hall, 93 N.J. at 568, 461 A.2d 1155. Until then, this court finds that the post-deprivation procedures generally followed in cases involving the search and seizure of suspected criminals (i.e., arraignments, probable cause hearings and the like) are constitutionally insufficient to protect against erroneous governmental restraint on the liberty of a person believed to be a material witness.
Due to the absence of any Court Rule or legislation in this area, the court feels compelled to prescribe procedures to fill the gap as follows:
1. Before a person may be apprehended or detained as an alleged material witness, there must be a pending criminal action against an accused;
2. The person believed to be a "material witness" may not be apprehended or detained without first having been served with an order directing the person to appear in court at a future date for the purpose of having the court determine whether the person should be adjudged a "material witness", and without first giving such person an opportunity to be heard in opposition thereto. The order, which may be obtained ex parte, shall be accompanied by a sworn affidavit from the State setting forth reasonable grounds to believe that the person has important information concerning the pending criminal action and is not likely to appear in court in response to a subpoena. The *386 burden of proof on this initial application is the preponderance of the evidence. The application shall specify the date, time, and place that the person shall appear in court and shall be served personally at least 48 hours before the scheduled hearing. The order shall advise the person of the right to be represented by counsel at the hearing, at which time the court will make a determination as to the status of the person as a "material witness".
3. Under exigent circumstances, if the requirements of effective law enforcement would be thwarted by requiring prior notice to be given to the person, the State may make an application to the court ex parte for the entry of an order directing the issuance of a warrant authorizing the police to take the person into custody and directing that the person be brought forthwith before the court. In support thereof, the State must furnish the court with a sworn affidavit containing clear and convincing proof to support the claim of exigency. If a warrant is issued, and executed, the person shall be brought immediately to a Superior Court judge, where the nature of the proceedings and his rights in connection therewith shall be explained. At this first appearance the judge shall advise the person that he has the right to be represented by an attorney; that a hearing to determine whether the person is, in fact, a "material witness" will be scheduled; and that the person has a right to be released without condition, or on bail or recognizance, with or without sufficient surety, to assure his appearance at such hearing.
If the person cannot be brought to court during regular court hours, then, once taken into custody, the person shall be brought to the emergent duty Superior Court judge who shall make a determination as to whether exigent circumstances exist to justify his future detention and, if so, whether the person should be released without restriction or on bail or recognizance, with or without sufficient surety, pending the hearing which shall take place the following day. If the person is financially unable to post bail or provide sufficient surety to *387 assure his future appearance and it, therefore, becomes necessary to detain the person overnight, that person must be lodged in comfortable quarters, not with or near the general jail population, and shall be fed adequate fare of a quality superior to that which is fed to the general jail population. However, the State shall first make reasonable and diligent efforts to arrange for less stringent restrictions than detention, such as placing the person in the custody of a designated individual or organization agreeing to supervise the person or by placing restrictions on the person's travel, association, or place of abode during the period of such release. See Neb. Rev. Stat., Sec. 29-507 (1981).
4. At the hearing to determine the person's status as a "material witness," pursuant to the procedures set forth in paragraph 2 or 3 above, the following rights shall be afforded:
A. the person shall have the right to be represented by an attorney;
B. the person shall have an opportunity to be heard if he chooses and to present witnesses and documentary evidence;
C. the person shall have all of the evidence in support of the State's claim fully disclosed;
D. to the extent practicable, the person shall have a right to confront and cross-examine the State's witnesses;
E. the State shall demonstrate by clear and convincing evidence that the person is a "material witness" who will not appear at a future proceeding without the imposition of restrictions on personal liberty;
F. the judge shall forthwith render a decision concerning the release of the person and shall make a determination as to his status as a "material witness," setting forth the reasons for such determination.
Finally, the court would be remiss if it omitted to mention that unusual situation where there is no pending criminal action, yet probable cause exists to believe that a person possessing essential information concerning a criminal investigation is about to leave the jurisdiction, thereby depriving the State of the use of important testimony in a future criminal prosecution. While such circumstances may present a problem for law enforcement, nevertheless, the potential for abuse by the State is too great to justify the apprehension or detention of a person in the absence of a pending criminal action. However, law enforcement is not without other recourse. *388 A fleeing "material witness" still may be apprehended if the circumstances are so extraordinary as to justify an arrest for obstruction of justice under N.J.S.A. 2C:29-1.
In sum, this court concludes that notice and an opportunity to be heard are required before a person can be apprehended and/or detained as a material witness. Under exigent circumstances, upon clear and convincing proof of the exigency, such person may be apprehended without prior notice but he must be afforded a hearing before he can be detained. Finally, under no circumstances may a person be arrested or detained without court process, such as an order or warrant as prescribed above and unless there is a criminal action pending against an accused.
In this case, the court has found that the issuance of the warrant was illegal, not only because of the lack of a pending criminal action, but because the allegations made by the State in support of its ex parte application did not clearly and convincingly demonstrate exigent circumstances so as to justify Misik's arrest and detention. Such arrest and detention constitute a fundamental deprivation of a person's due process rights as guaranteed by both the federal and state constitutions.
Accordingly, the warrant is quashed and the complaint dismissed. The condition upon Misik's liberty is discharged, and his arrest record as a material witness is deemed expunged.
NOTES
[1] In this regard the State cited State v. Hand, 101 N.J. Super. 43, 55-56, 242 A.2d 888 (Essex Cty.Ct. 1968).
[2] The "Material Witness" statute provides as follows: Every judge and magistrate shall, when in his judgment the ends of justice so require, bind by recognizance, with sufficient surety, any person who shall declare against another person for any crime punishable by death or imprisonment in the state prison, or any person who can give testimony against any person so accused of any such crime, whether the offender be arrested, imprisoned, bailed or not. N.J.S.A. 2A:162-2.

No person shall be committed to or detained in jail to secure his appearance as a witness against any person charged with a crime, except such crimes as are punishable by death or imprisonment in the state prison, whether the offender be arrested, imprisoned, bailed or not.
Any person committed or detained as a witness shall not be kept in the same apartment with or be provided with the same fare as persons charged with or convicted of crime. The board of chosen freeholders of each county shall take care that all persons committed or detained as witnesses shall be comfortably lodged and provided for, and not further restricted of their liberty than is necessary for their detention. N.J.S.A. 2A:162-3.
[3] R. 3:26-3 is the court rule promulgated pursuant to the statute and it provides as follows:

"Every judge shall, when the interest of justice requires, bind with sufficient surety all persons who can give testimony against one accused of crime punishable by death or by imprisonment in state prison, whether or not the offender is arrested, imprisoned or bailed."
[4] In the absence of appellate authority this court is under no obligation to follow the reasoning in the Hand case. See, State v. Pittman, 124 N.J. Super. 334, 337, 306 A.2d 500 (Law Div. 1973).