(33 South. 211.)

No. 14,410.

KLINE v. EUBANKS.

(Dec. 15, 1902.)

EMPLOYING LABORER OF ANOTHER — CIVIL LIABILITY—CRIMINAL PROSECUTION —MALICE—FRAUD.

1. "Under St. No. 50 of 1892, a prosecution criminally and a conviction is a condition precedent to the civil liability of a person sought to be made liable for employing a laborer previously in the employ of another." Walworth v. Ballard, 12 La. Ann. 245.

2. Plaintiff did not allege in his petition that defendant had been convicted under St. No. 50 of 1892, and therefore he has no right of action under that statute.

3. With reference to a civil wrong giving right to a civil action without a preceding conviction, under the doctrine that "every act whatever of a person which causes injury to another obliges the one owing to whom the same has occurred to make it good," the court held that employing a laborer already employed by another person will not create a liability on the part of the one employing him, unless it is done with some degree of threat, fraud, falsehood, deception, or benefit.

The complaint does not give rise to the inference that defendant maliciously caused and procured a breach of the contract.

Malice nor fraud is charged. In the absence of either, the action is not maintainable.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Richland; W. J. Gray, Judge.

Action by Wilber Kline against William Eubanks. Judgment for defendant, and plaintiff appeals. Affirmed.

George Wesley Smith, for appellant. Carey J. Ellis and Bernard Titche, for appellee.

BREAUX, J. Plaintiff brought this action against the defendant for $2,150,—an amount claimed as damages he alleges he has suffered. The grounds of plaintiff's suit are that defendant enticed away a laborer from his plantation, and employed him.

Plaintiff alleges that he contracted with James Wilhite, the laborer referred to, about Christmas of the year 1901, for the said Wilhite to live on his place, and that he (petitioner) leased to Wilhite a tract or parcel of land at a rental consisting of a proportion of corn and cotton that the laborer would raise on the place.

Plaintiff avers that he, relying on his contract with this laborer, to the knowledge of defendant, made advances in goods and money to the laborer, and that he made improvements which he would not have made had it not been for this contract.

| | |
|---|---|
| For the laborer's failure to cultivate new land, as it was anticipated by the plaintiff he would do under the contract, plaintiff claims | $ 100 |
| Loss of crop on land the laborer had bound himself to work | 900 |
| Loss of time in trying to get another tenant | 75 |
| Total | $1,075 |

Plaintiff claims an additional sum allowed by the text of St. No. 50 of 1892, which reads

that he "shall be liable in double the amount of damages in a civil action."

The defendant pleaded, in the first place, the exception of no cause of action, and subsequently, in a second exception, he pleaded that, inasmuch as plaintiff sued for damages for the violation of a criminal statute, the state, not he, had the right to bring such an action, and that, if he (plaintiff) had a standing in court to recover such damages, the suit, under the terms of the statute, could only be brought after prosecution and conviction in a criminal proceeding; that that portion of the statute alleged to have been violated is unconstitutional and inoperative, by the reason of the fact that the purpose of the statute is not indicated by the title, and the body contains more than one object; and lastly defendant pleaded the prescription of six months. With consent of all parties concerned, the exceptions were consolidated. They were heard by the court, and dismissed as of nonsuit, at plaintiff's costs.

Plaintiff, in bringing suit, does not seem to have contemplated recovering any damages except those recoverable under St. No. 50 of 1892. The averment of his petition shows that he looked to that statute to afford him the relief for which he sued.

In our view, to the extent that anything is claimed under that statute the action cannot be sustained. A verdict of conviction is made a prerequisite.

The statute cited supra denounces the act complained of as a misdemeanor, and sets out that upon conviction the defendant shall be fined, and he shall be liable in double the amount of damages in a civil action.

The language is even clearer as relates to conviction as a prerequisite, than the statute interpreted in Walworth v. Ballard, 12 La. Ann. 245, which statute provides, as shown by the following abbreviation of the text: "That in case any person shall take possession of a vacant estate without being duly authorized, he shall be prosecuted, and on conviction, shall be fined and shall be moreover liable to pay all the debts of the estate." Act No. 315, p. 400, Acts 1855.

The court held in the decision just cited that conviction was a prerequisite to civil action.

The view has since been affirmed. Carl v. Poelman, 12 La. Ann. 344. As in the cited cases, the act complained of is made penal, and said the court in the first case cited supra, from which we quote: "We think the intention of the legislature was to make both the penalties depend upon a conviction under a public prosecution. That is, we think, the more natural interpretation of the language used, according to its order." We find close analogy between the case before us for decision and the decisions from which we have just quoted, in which the court further said: "Moreover, it is hardly to be supposed that the legislature intended to invest the private citizen with the power, upon the proof of the conversion of an article or two of small value to the use of another, to charge that other with all the debts with which the succession may be burdened, however large they might be."

For similar reasons, it is not probable that it was intended to invest the private citizen, under the statute of 1892, with the power of recovering twice the amount of the damages on the ground of misdemeanor, not shown by a verdict found prior to the civil suit.

The court also said in the cited case "that administration of criminal justice is much safer in the hands of public officers charged with the prosecution of crimes than in the hands of private persons governed by personal consideration. In making the act in question penal, the lawmaking power placed the authority to find guilt in the hands of public officers, and afterward invested private persons with the right to recover the damages imposed by the statute."

We leave this branch of the case, convinced that plaintiff can find no relief under St. No. 50 of 1892 before a prior conviction in accordance with the provisions made evident by its text.

We will here add that we agree with plaintiff that one may recover damages before a civil court for damaging crimes. We hold, however, as stated before, that the condition precedent must be shown. Here, as before said by us, it does not appear affirmatively that there was a prior conviction.

We pass to the next proposition pressed upon our attention by plaintiff,—that, if his action be unavailable under the statute cited, he still has a right to recover under the general law, which provides that "every act

whatever of man that causes damage to another obliges him by whose fault it happened, to repair it." Civ. Code, 2315.

Allegations made with the view of bringing the action within the terms of the special statute of 1892 are scarcely broad enough to bring the action within the general law. In other words, the enticing away and knowingly employing a laborer, substantially charged in the petition, do not set forth a cause of action under the law just quoted. It more particularly appears that the laborer who deserted the field was the cause of damage, and not the last employer. The laborer, who is a free agent, after all, is the proximate cause, and the employer the remote.

The following decisions, because of the difference in the facts from this case here, we think, as relates to law, sustain our decision. It appears in Dickson v. Dickson, 33 La. Ann. 1263, that the acts complained of had been committed *"solely for the purpose of injuring the plaintiff and of preventing her from deriving any benefit from her lease."* (Italics ours.)

We do not consider that the facts in the Dumas Case, 48 La. Ann. 1495, 21 South. 91, are entirely analogous.

Moreover, a study of the decision in Dumas Case shows that the defendant went to the premises, and colluded with the debtor to defraud the petitioner of his property by surreptitiously removing and appropriating property involved in the suit.

Plaintiff in that case charged the defendant with fraudulently and tortiously obtaining possession of the property under the cover of a pretended contract purporting to be a sale; that he colluded and conspired with the debtor, and committed other acts which brought the case within the terms of article 2324 of the Code. As before stated, we difference this case here from the two just referred to.

We will not dwell any further upon the cited cases. We leave them, convinced that they are correct, but not controlling of the issues here. In our case it is not alleged that defendant defrauded plaintiff to gain some personal advantage.

There are decisions directly in point to which attention has been given by eminent commentators upon the subject.

In Boulier v. Macauley (Ky.) 15 S. W. 60, 11 L. R. A. 550, 34 Am. St. Rep. 171, the principle here involved was considered, and it was said that "an action cannot, in general, be maintained for inducing a third person to break his contract."

In another case it was said: "Damage must result as the direct and proximate consequence, otherwise the action cannot be sustained." Kimball v. Harman, 34 Md. 410, 6 Am. Rep. 340.

"No malice or fraud is alleged. The action cannot be sustained." McCann v. Wolff, 28 Mo. App. 447.

"If the acts are merely wanton and malicious, then they are actionable." 1 Jag. Torts, p. 636.

"If one was induced to break his contract by deception, it may be different. An action may be sustained against him." Cooley, Torts (2d Ed.) p. 581. In the case before us, no malice, no fraud, and no deception was alleged.

The statutory provision not having been followed, which provides for relief against one who entices away a laborer under circumstances mentioned in the statute of 1902, we cannot grant relief under that statute. Further, we find no ground to reverse the judgment under the law looking to the liability of one who by his act causes damages to another; i. e., under article 2315, Civ. Code.

The statute cited supra was enacted with the intention of protecting contracts entered into with laborers on farms. It was special in its purpose, and affords the remedy which should be followed when the facts and circumstances are as they are here.

It imposes a new duty where none existed before, as to which (i. e., new duties imposed by law) Jaggard pertinently says: "Where the statute imposes a new duty where none existed before, and gives a specific remedy for its violation, the presumption is that this remedy was meant to be exclusive, and the party complaining of a breach is confined to it."

Here a new duty is imposed, and special damages to be recovered, which differences the statute, and, we are inclined to think, indicates that the new remedy is to be, to some extent, exclusive. When the general law was adopted (i. e., article 2315, Civ.

Code), and for years afterward, the present system of labor was not known, and no necessity was felt for the new remedy.

Without especially passing upon this point, we reiterate the view that the cited statute has not been complied with, and that the cause does not fall within the terms of the cited article.

The following decision upon the subject is interesting: Boyson v. Thorn (Cal.) 33 Pac. 492, 21 L. R. A. 233.

For these reasons, the judgment appealed from is affirmed.