**BRINKLEY & WEST, INC., Plaintiff-Appellant,**

v.

**FOREMOST INSURANCE COMPANY, Defendant-Appellee.**

**No. 71–3110.**

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1974.

---

Clarence F. Favret, Jr., New Orleans, La., for plaintiff-appellant.

Donald R. Mintz, Carl J. Schumacher, Jr., New Orleans, La., for defendant-appellee.

Before BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

ON PETITION FOR REHEARING

JOHN R. BROWN, Chief Judge:

The history of this case exemplifies the precarious path that the federal courts must tread when they follow the

shifting tracks of the Erie Railroad.[1] In our original opinion [2] in this case the clearly defined and recently reaffirmed conflicts principles of Louisiana [3] led us to conclude that the District Court below had erred in rendering a summary judgment for defendants. Accordingly, we reversed and remanded it for a trial on the merits. However, just prior to the publication of our opinion the Louisiana Supreme Court in Jagers v. Royal Indemnity Co.[4] abruptly rejected the long-settled doctrine of lex loci delecti, the place of the injury rule, and the rule followed by our opinion. Thus, we must retreat and regroup in an effort to again do our *Erie-Klaxon Electric* [5] duty —but this time with less predictable guidance as to how the Louisiana courts would decide a complex multi-state tort case such as ours. However, despite the change in the law, we are convinced that plaintiff's claim would be heard on the merits by Louisiana courts, for under the application of modern principles of conflicts law, the interests of her sister states would be found to predominate over the transaction that gave rise to plaintiff's claim. Therefore we again reverse and remand for decision on the merits.[6]

### The Transaction

Brinkley & West (Agent), a Louisiana corporation, claims to have had an exclusive agency agreement with Foremost Insurance Company (Principal), a Michigan Corporation, authorized to do business in Louisiana, whereby the Agent would be responsible for marketing certain kinds of insurance coverage offered by Principal in 18 midwestern, southern, and southwestern states.[7] Pursuant to the contract, Agent entered into subagency agreements with licensed insurance agents in these states to enlist them to solicit insurance proposals. These subagency contracts were presumably executed by the subagents in their respective states. The subagents lacked the power to bind Principal or Agent and were authorized merely to forward the proposals to Agent for acceptance. Monies due under the contract were similarly sent directly to Agent at its office in New Orleans.

These subagency contracts are the substance of this suit. Specifically, Agent complains that prior to the end of the primary contract, Principal, by directly contacting them, began pirating the subagents to do business directly with Principal. Through its field adjusters Principal induced the subs to breach their contracts with Agent in order to be available to write its insurance coverage directly.

Alleging that these acts constituted tortious interference with its sub-

1. Erie R.R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. Brinkley & West, Inc. v. Foremost Ins., Co., [July 13, 1973, No. 71–3110], withdrawn prior to permanent publication.

3. Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 236 So.2d 216 (1970).

4. La., 276 So.2d 309 (1973).

5. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

6. "[T]hough we hold that summary judgment was improper we express no opinion on the ultimate merits of the case or the best mode to resolve them. We repeat the frequent caveat that reversal does not necessarily foreshadow a trial, partial or full blown. That depends on the facts as developed and tested, not what the lawyers say they are in opposing affidavits. See . . . Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505, 511; Mizell v. North Broward Hospital District, 5 Cir., 1968, 392 F.2d 580; Webb v. Standard Oil Co., 5 Cir., 1969, 414 F.2d 320; Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, 5 Cir., 1958, 257 F.2d 162, 167; Chagas v. Berry, 5 Cir., 1966, 369 F.2d 637, 642; Barber v. Motor Vessel 'Blue Cat', 5 Cir., 1967, 372 F.2d 626; Tyler v. Peel Corporation, 5 Cir., 1967, 371 F.2d 788, 791–792." Smith v. St. Paul Fire & Marine Insurance Company, 5 Cir., 1972, 471 F.2d 840, 842–843.

7. The states included are Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, New Mexico, North Carolina, Oklahoma, South Carolina, Tennessee, Texas and Virginia.

agency contracts, Agent brought this diversity suit in the United States District Court for the Eastern District of Louisiana where, under the *Erie-Klaxon* rules,[8] the District Court is bound to follow the Louisiana principles of conflicts of law.

■■ Responding to Principal's motion for a summary judgment, Agent conceded that the substantive law of Louisiana recognized no cause of action for intentional interference with or procurement of the breach of contractual relations and that the lex loci delicti standard was the Louisiana rule. Concluding that Louisiana was the situs of Agent's damages, the District Judge dismissed the claim.[9] Because we disagreed with the initial conclusion that Agent had suffered no damages in those states where Principal had allegedly induced breaches of the subcontracts, we held that reversal was in order.

Now post-Jagers v. Royal Indemnity Co.[10] the problems posed for the Court are two-fold and difficult—since *Jagers* has unquestionably changed the law, [i] to what has it been changed and [ii] with what results for the case before us?

As for the first, analysis of the case offers ambiguous guidelines. There the Louisiana Supreme Court found that a suit between two Louisiana domicil-

iaries, mother and son, arising from a Mississippi accident should not be barred by the Mississippi intrafamily immunity doctrine because the Court viewed the case as presenting a false conflict of laws. Despite the temporary residence of the plaintiff in Mississippi, the Court saw no reasonable interest that Mississippi might have in the application of its laws to the case. In overturning its long established "vested rights" doctrine[11] the Court explicitly found that:

> No reason advanced for perpetuating the doctrine which would apply the law of the place of the tort, particularly in false conflicts cases like Johnson and the instant case, is either convincing or controlling. Johnson v. St. Paul Mercury Insurance Company, supra, is overruled.[11.1]

Citing the lack of any constitutional basis for the vested rights theory, the Court reasoned that any theory of conflicts law inevitably resulted in the extraterritorial application of the laws of some state. In addition, applying the law of the forum resulted in no necessary unfairness to defendants.[12]

■ This clear rejection of lex loci delicti, particularly in cases of false conflicts such as *Jagers*, left a vacuum in Louisiana conflicts principles unfilled by

8. Erie R.R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

9. We have written much about the propriety of dismissal for failure to state a claim—Louisiana jurisprudence would describe it as an exception of no cause of action—when some state of facts might support relief, see e. g., Cook & Nichol Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505 and cases cited. Here the District Court did not really fall into that trap of dismissing a case on the "barebones pleading". If the trial judge was correct that Louisiana substantive law applied, then as the parties concede the case was appropriately dismissed. However since we alternatively hold that the Louisiana courts would hold that (i) the law of the state where inducement to breach occurred is the applicable law *and* that (ii) even if this was not so, then on the basis of general

law that same injury—and hence the tort— occurred in the place of inducement, we conclude that there is a state of facts upon which relief can be granted by a Louisiana diversity court.

The case was actually dismissed for failing to state a claim under the law of the diversity forum. It was properly characterized as a motion for summary judgment under Rule 12, Fed.R.Civ.P. because matters other than pleadings were considered by the trial judge.

10. Jagers v. Royal Indemnity Co., La., 276 So.2d 309 (1973).

11. And on which we relied heavily in our first opinion. Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 236 So.2d 216 (1970).

11.1 Jagers v. Royal Indemnity Co., La., 276 So.2d 309, 312 (1973).

12. Jagers v. Royal Indemnity Co., La., 276 So.2d 309, 312–313 (1973).

the remainder of the opinion. Cryptically, the only reference by the Court to substitute guidelines was to say:

> That some modern methods for determining whether to apply the law of the forum are faulty in some respects should not deter a court in the application of the law of the forum to its citizens, when not otherwise prohibited.

This statement—followed by a footnote to the choice of law principles in § 6 of the Restatement (Second) of Conflicts[13]—has been accepted by both Agent and Principal as establishing the interest analysis method as the law of Louisiana where a real conflict of laws exist between the parties. This is no real concession since for our *Erie* purposes we agree that the Court's note 3 adopts the analysis of the Second Restatement.[14]

Therefore, since *Jagers* is the only weather vane available, the interest analysis principles embodied in the Second Restatement are the applicable conflicts law of Louisiana and our vehicle for deciding this case.

### The Variations On A Theme Of Interest Analysis

We start with the initial determination that the case before us presents more than an issue of spurious conflict of laws. This is to say that Louisiana has some interest in seeing that its laws are applied to the case other than the mere concern of a forum that its rules of trial administration be followed. Since we have concluded—as we will elaborate later—that the Louisiana law barring suits for tortious interference with contractual relations is based on a state policy to protect the job mobility of the labor force, there can be no doubt that Louisiana as domiciliary state of some of the subagents as well as of Agent has more than a mere forum's interest in this suit.

Passing the false conflict hurdle, the Second Restatement (Second) of Conflicts adopts a procedure which is generally consistent with the state-interest theory of conflicts law. Section 6 sets out the general principles for focusing on and selecting domestic rules and policies relevant to the particular issue, to the occurrence, and to the parties. These principles themselves vary in importance according to the type of case at issue, *e. g.* contracts or torts actions. In the torts area, the Restatement commentators suggest that our case would turn on a consideration of factors: (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (g) ease in the determination and application of the law to be applied.[15] (See note 13, *supra*).

13. *Id.* at 312. Note 3 reads:
For choice-of-law principles, see Restatement, Second, Conflict of Laws, § 6 (1969):
"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law,
"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
"(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
"(d) the protection of justified expectations,
"(e) the basic policies underlying the particular field of law,
"(f) certainty, predictability and uniformity of result, and
"(g) ease in the determination and application of the law to be applied."

14. The only other available alternative that occurs to this Court is that Louisiana, if it were met with a multi-state tort or contract action presenting a true conflict, would deem it best to revert to the vested rights doctrine as have other states in similar situations. Wessling v. Paris, 417 S.W.2d 259, 261 (Ky., 1967); Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo., 1969); see also R. Weintraub, Commentary on the Law of Conflicts, 260–61 (1st ed. 1971). While Louisiana may jog this way at some later date, there is nothing to indicate in *Jagers* that they mean to do so now.

15. Restatement (Second) of Conflicts § 6 (1971), Comment on Subsection (2) leads us

Section 145 specifically applies these principles to the torts field by denoting "contacts" by which the courts can ascertain whether the state rule is rationally applicable.[16] A particular contact is important for this purpose only insofar as it is relevant to this specific domestic policy at issue. Thus, instead of tallying each activity within the state—as might be done to determine the adequacy of service of process under a long arm statute—courts are to look first to the purpose behind the state rule and then the aspects of the transaction that further it.[17] Ultimately and ideally, the combined "Section Six" principles and the "145" contacts relevant to these principles will point toward the law of one state as paramount because it has the "most significant relationship" to the issue. Therefore, following this method, our enterprise here is to consider the policy behind the Louisiana rule, the rule in the other potentially interested states, and the situs of the relevant contacts.

*Interest Analysis Applied—Louisiana Law*

The Louisiana rule barring an action for tortious interference with contractual relations has historical derivations with implications for our choice-of-law quest. Early on the Louisiana courts opted to reject this English action in favor of strictly limiting the non-breaching employer to his suit against the employee on the employment contract.

At first the Louisiana Supreme Court approached the issue from the standpoint of strict statutory construction. In the initial case, Kline v. Eubanks,[18] the Court found that a criminal statute sanctioning as a misdemeanor anyone who induced an employee to break his contract and permitting a special recovery of twice the civil damages would not sustain a suit by an injured employer where there was no prior conviction. Since the statute imposed a new duty—to refrain from enticing away farm laborers—where none existed before, the

---

to the conclusion that the other principles are not significannt to tort cases such as ours, *e. g.*,

"(d) Needs of the interstate and international systems," suggests merely that commercial comity should be considered by the forum state in resolving its choice of law problems.

"(g) Protection of justified expectations,"— as the comment to § 145 rightly notes this factor has little or no relevance to the torts field.

"(h) Basic policies underlying the particular field of law,"—

Finally, a number of policies, such as the deterrence of tortious conduct and the provision of compensation for the injured victim, underlie the tort field. These policies are likely to point in different directions in situations where the important elements of an occurrence are divided among two or more states.

"(i) Predictability and uniformity of result,"—again this factor is inapplicable to the torts area for generally parties do not "give thought to the problem of applicable law in planning their transactions" see, Comment to § 145(b).

16. Restatement (Second) of Conflicts (1971).

**TITLE A. THE GENERAL PRINCIPLE**

§ 145. *The General Principle*

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred.

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

17. R. Weintraub, Commentary on the Law of Conflicts, 260–61 (1st ed. 1971).

18. 109 La. 241, 33 So. 211 (1902).

Court refused to extend it beyond its literal meaning. For the same reason, no cause of action would be implied from the Louisiana general tort liability code provision.[19]

Not long afterwards, the Supreme Court discussed the policy behind this hesitancy to permit such suits. In B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co.[20] the Louisiana court explained that such remedies devolved from an era when servants were likened to chattels and being deprived of their services was akin to conversion.[21] Such suits were inconsistent with the Codal provisions permitting the free movement of labor and the right to change the employment relations.[22]

■ Thus, Louisiana employers have historically been restricted to their contract actions against errant employees. This is consistent with the strong Louisiana policy against contracts not to compete.[23] For conflicts purposes, the Louisiana rule suggests a strong domestic interest in protecting the labor force of the state from the impediments to job mobility that could conceivably occur if the original employer could threaten suit against the outside predator.

*The Interests Of The Eighteen Sisters*

■ Turning then to consider the interests of the other potentially involved states, it is significant that every jurisdiction in which Agent alleges that Principal pirated its subs away permits these suits save for Louisiana.[24] This is consistent with the across-the-board adoption by most jurisdictions in the country of the right of suit to provide vindication for disapproved conduct. Such common action for the benefit of such specific economic interests permits generalizations to be made—the sort helpful alike to history, sociology, and the law. Thus, some courts, relying solely on the common law position, have emphasized the importance of such a rule for the protection of commercial expectations. Unlike Louisiana, these states recognize that the right to protect both business and employment relations against such purposeful interference is a natural incident to the existence of a contract—actual or implied.[25] Still others have regarded the property interest inherent in contractual relationships to be of such importance as to justify codifying the

19. La.Stat.Ann. (rev.) art. 2315.

20. 113 La. 388, 37 So. 2 (1904).

21. Moulin v. Monteleone, 165 La. 169, 115 So. 447 (1927).

22. Fraud and deception would provide the only instances in which the Louisiana courts would find such suits permissible. Kline v. Eubanks, 109 La. 241, 243, 33 So. 211, 213 (1902).

23. La.Stat.Ann. (rev.) 23:921.

24. All 17 states apparently hold it actionable. *Cf.*, Evans v. Swaim, 1944, 245 Ala. 641, 18 So.2d 400, and see, Southwestern Publishing Co. v. Ney, 1957, 227 Ark. 852, 302 S.W.2d 538, 543; Paul's Drugs Inc. v. Southern Bell Tel. & Tel. Co., Fla.App., 1965, 175 So.2d 203; Nottingham v. Wrigley, 1965, 221 Ga. 386, 144 S.E.2d 749; W. P. Iverson & Co. v. Dunham Manufacturing Co., 1958, 18 Ill. App.2d 404, 152 N.E.2d 615; Helvey v. O'Neill, Ind.App., 1972, 288 N.E.2d 553; Taylor v. Hoisting and Portable Engineers Local 101, AFL–CIO, 1962, 189 Kan. 137, 368 P.2d 8, 10; Derby Road Building Co. v.

Commonwealth, Ky., 1955, 317 S.W.2d 891 (different portion of opinion overruled in F. Foley Construction Co. v. Ward, Ky.App., 1963, 375 S.W.2d 392); Bailey v. Richards, 1959, 236 Miss. 523, 111 So.2d 402, 407; Downey v. United Weather Proofing, 1953, 363 Mo. 852, 253 S.W.2d 976, 982; Wolf v. Perry, 1959, 65 N.M. 457, 339 P.2d 679; Fowler v. Nationwide Ins., 1962, 256 N.C. 555, 124 S.E.2d 520; Emery v. A & B Commercial Finishing Co., Okl., 1957, 315 P.2d 950; Smith v. Citizens and Southern National Bank of S. C., 1962, 241 S.C. 285, 128 S. E.2d 112; Love and Amos Coal Co. v. United Mine Workers, 1963, 53 Tenn.App. 37, 378 S.W.2d 430, 438, cert. denied, 376 U.S. 971, 84 S.Ct. 1137, 12 L.Ed.2d 85; Davis v. Freeman, Tex.Civ.App., 1961, 347 S.W.2d 650, 654, no writ; and Worrie v. Boze, 1956, 198 Va. 533, 95 S.E.2d 192. Also, see generally, 45 Am.Jur.2d, Interference, 280 and 26 A.L.R.2d, Procuring Breach of Contract, 1227.

25. See, e. g. Hill Grocery Co. v. Carroll, 223 Ala. 376, 378, 136 So. 789, 791 (1931).

common law right.[26]  Each of these states therefore have demonstrated that each has interest in the disruption of employment relationships occurring within its borders as well as other tortious interferences with performance of contracts.

### Factor (g) Ease In The Determination And Application Of The Law To Be Applied

Turning at last to the remaining § 6 variant, this factor alone might seem to lend weight to Principal's argument that Louisiana law should apply to the entire case and the summary judgment below should be affirmed. While the simplicity of this result is beguiling, we do not agree, for as alter egos of the Louisiana Supreme Court, we take our course from its expressed position in *Jagers*:[27]

It may be true that the formulation of rules for the application of the law of the forum in cases which might involve the law of more than one state is difficult. Difficulty, however, is no excuse for abandoning the judicial function.

Louisiana in its deliberate break from the past has accepted the burden which flows from abandoning the easy way out —simply stopping with the rule it would apply between Louisiana litigants for occurrences solely within the state of Louisiana. This forces it to consider the interests of the sister states and whether recognition of these interests would impose on it any unusual difficulties in ascertaining what those foreign legally recognized interests are. Louisiana is a part of the Union and there is no indication that under its new rule it would find any difficulty either in ascertaining what the protectable interests are in each of the 18 sister states or that recognizing such substantive "foreign" rights as the basis for a suit which has to be brought in Louisiana would frustrate or infringe in any way on its capacity fully to effectuate its own contrary local substantive rule in a local Louisiana contest. On the contrary, we conclude that were this case pending in a Louisiana Court it would find a way to vindicate these almost universally recognizable rights. It would not hold that the Louisiana geneology of a rule springing from the highly personalized relationship of master and servant would compel it to carry this over to defeat a claim for tortious disruption of a modern, more complex commercial arrangement.

We therefore, adhere to our reversal and remand to the Trial Court for action consistent with this opinion[28] (see note 6, *supra*).

Rehearing denied.

26.  Ga.Code Ann. § 105–1207
   In all cases he who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a joint wrongdoer, and may be sued either alone or jointly with the actor. Ga.Code Ann. § 105–1401
   The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie. Code § 105–1401.

27.  Jagers v. Royal Indemnity Co., La., 276 So.2d 309, 313 (1973).

28.  We reiterate that we affirm the summary judgment below for Principal with respect to any contracts between Agent and Louisiana subagents made and performable within Louisiana.