GENERAL OFFICE PRODUCTS CORP., demandante, *v.* A. M. CAPEN'S SONS, INC., demandada.

*Número:* O-84-278      *Resuelto:* 29 de junio de 1984

*Mario Arroyo Dávila,* de *Fiddler, González & Rodríguez,* abogado de la peticionaria; *Philip E. Roberts,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico nos ha certificado la cuestión siguiente, conforme lo dispuesto en la Regla 53.1 de Procedimiento Civil de Puerto Rico y la Regla 27 de nuestro Reglamento:

> Whether a cause of action exists under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. Section 5141, for tortious interference with a contract relation. Exp., Anexo 1, pág. 1.

Los hechos que dan margen a la pregunta fueron descritos así por el tribunal. Gussco Manufacturing, Inc. le concedió en 1979 a la demandante, General Office Products Corp., el derecho a la distribución en exclusiva de sus productos en Puerto Rico. La demandada, A. M. Capen's Sons, Inc., vendía productos Gussco en Puerto Rico desde los años sesenta y los siguió vendiendo después del referido contrato de exclusiva. El 3 de octubre de 1983 General Office Products, Corp. demandó a Capen y alegó que ésta ha estado interfiriendo intencionalmente con el contrato entre aquélla y Gussco y que ha inducido a Gussco a violarlo. La demandada Capen presentó una moción de desestimación o sentencia sumaria en que aduce que en el Derecho de Puerto Rico no cabe acción en daños por interferencia intencional con obligaciones contractuales. La demandada funda su posición en el argumento de que los tribunales de Louisiana, al inter-

pretar el Art. 2315 de su Código Civil, análogo al 1802 nuestro, —31 L.P.R.A. sec. 5141— no han reconocido tal acción. Expresa la demandada que el derecho de daños en Puerto Rico se rige por el Derecho Civil —*Valle* v. *Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 695–697 (1979); *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853, 855 (1976); *Reyes-Cardona* v. *J. C. Penney Co., Inc.*, 694 F.2d 894, 896 (1rst Cir. 1982); *Republic Sec. Corp.* v. *Puerto Rico Aqueduct, etc.*, 674 F.2d 952, 958 (1rst Cir. 1982); *Edwards* v. *Sotomayor*, 557 F. Supp. 209, 218 (D.C. P.R. 1983)— y que la jurisprudencia de Louisiana provee un modelo apto para el análisis de la situación presente. *Rivera* v. *Rossi*, 64 D.P.R. 718, 729 (1945).

Varios factores militan contra el uso en este caso de la norma prevaleciente en Louisiana: la doctrina en esa jurisdicción no se basa en fuentes civilistas y se encuentra actualmente bajo fuerte ataque en la propia Louisiana. Esta regla es, de todos modos, contraria al criterio que rige hoy en los países civilistas más cercanos a nuestra tradición.

La doctrina de Louisiana se sentó en *Kline* v. *Eubanks*, 33 So. 211 (La. 1902). El tribunal no utilizó fuentes civilistas para sustentar su teoría. Se basó en vez, en la jurisprudencia que para entonces regía en Kentucky, Maryland, California y Missouri, a pesar de que se trataba de una interpretación del Art. 2315 del Código Civil. De entonces para acá estos cuatro estados han abrazado la regla vigente en el resto de Estados Unidos, al efecto de reconocer la acción de intervención torticera con obligaciones contractuales. *Moss* v. *Guarisco*, 409 So.2d 323, 329 (La. App. 1981).

El Art. 2315 del Código Civil de Louisiana es copia del Art. 1382 del Código Civil de Francia. De haberse examinado la doctrina y jurisprudencia francesas de la época se hubiese hallado que la evolución de este aspecto de la responsabilidad civil en Francia comenzó a desarrollarse a partir de la segunda mitad del siglo diecinueve y se reconoció por la jurisprudencia desde comienzos de este siglo. Yves Serra, nota a la S. de 13 de marzo de 1979 de la Corte

de Casación (Ch. Com.), 1980 Recueil Dalloz Sirey, *Jurisprudence* 1, 2. El desarrollo francés, aunque con perfiles distintos, es en este sentido comparable a la evolución en Inglaterra y Estados Unidos, que se gesta para la misma época. Comentario, *An Analysis of the Formation of Property Rights Underlying Tortious Interference with Contracts and Other Economic Relations*, 50 U. Chi. L. Rev. 1116 (1983); Nota, *Tortious Interference with Contractual Relations in the Nineteenth Century: The Transformation of Property, Contract, and Tort*, 93 Harv. L. Rev. 1510 (1980).

A la luz de lo anterior es entendible la crítica dirigida a la regla de *Kline* en la propia Louisiana. *Moss* v. *Guarisco*, supra, págs. 328–330; *Moss* v. *Guarisco*, 412 So. 2d 540 (La. 1982); *Desormeaux* v. *Central Industries, Inc.*, 337 So. 2d 225 (La. 1976); Nota, *Inducing Breach of Contract*, 30 La. L. Rev. 713 (1970). En su expresión más reciente sobre el particular el Tribunal Supremo de Louisiana ha expresado, *Sanborn* v. *Oceanic Contractors, Inc.*, 448 So. 2d 91, 95 n. 5 (La. 1984):

> Plaintiff has argued in both lower courts that his petition and supplemental petitions state a cause of action for tortious interference with contracts. Such a cause of action has been rejected by this Court in *Forcum-James* v. *Duke Transportation*, 231 La. 953, 93 So. 2d 228 (1957). *See also Kline* v. *Eubanks*, 109 La. 241, 33 So. 211 (1902). However, there have been recent expressions by some members of this Court that, in a case squarely presenting the issue, *Forcum-James* should be re-examined. . . . As this case is presently before us, it does not present the issue (especially considering the state of the record) and an opinion on the subject at this time would be advisory at best. *However, were plaintiff to allege and prove defendant intentionally and willfully interfered with plaintiff's contract with Scimitar, that such intentional interference was the proximate cause of the failure of the contract, and that defendant's actions were motivated by malice, or at least not by a significant interest of its own, he might well be entitled to relief.* (Énfasis nuestro.)

Independientemente de la situación en Louisiana, la cuestión certificada es si cabe la acción de referencia bajo el

Art. 1802 del Código Civil de Puerto Rico. Este artículo deriva, como se sabe, del 1902 español, el cual a su vez se funda en el Art. 1382 del Código Civil francés. Examinemos la situación en Francia y España.

La doctrina y jurisprudencia francesas reconocen uniformemente la causa de acción. J. Ghestin y G. Viney, *Traité de Droit Civil —Les Obligations, La Responsabilité: conditions*, París, Ed. L.G.D.J., 1982, Vol. IV, pág. 237 y ss.; B. Starck, *Droit Civil: Obligations*, París, Ed. Librairies Techniques, 1972, pág. 581; H. et L. Mazeaud y A. Tunc, *Traité Théorique et Pratique de la Responsabilité Civile*, 6ta ed., París, Ed. Montchrestien, 1965, T. 1, pág. 144 y ss. Los tribunales han resuelto específicamente que toda persona que se asocia a sabiendas con la violación de un contrato con cláusula de exclusiva se expone a los efectos de la responsabilidad civil. R. Prieur, nota a la S. de 30 de octubre de 1968, Com., 1969, Juris-Classeur Périodique II No. 15964; S. de 11 de octubre de 1971 de la Corte de Casación (2da Ch. Civ.), 1972 Recueil Dalloz Sirey, *Jurisprudence* 119, 120.

La responsabilidad en que se incurre es de naturaleza cuasidelictual. Mazeaud y Tunc, *supra*, pág. 176. No basta la mera negligencia del tercero para establecer la responsabilidad. El actor debe probar que el tercero tuvo conocimiento efectivo del contrato a la violación del cual contribuye. Ghestin y Viney, *op. cit.*, págs. 244–246. Existen dos corrientes sobre la naturaleza de la culpa necesaria para que surja responsabilidad. La posición minoritaria requiere, a fin de que se incurra en responsabilidad, que el interventor actúe de manera determinante, particularmente activa, en la provocación del incumplimiento contractual. La corriente mayoritaria, favorecida por la Corte de Casación, exige únicamente el conocimiento de causa. No es necesario que el tercero incite al deudor a violar su obligación o que él juegue un papel decisivo en el incumplimiento del contrato. Serra, *op. cit.*, pág. 1.

En España se reconoce en términos análogos la respon-

sabilidad del tercero que se inmiscuye en las relaciones contractuales de otro, aunque no se ha analizado tan detalladamente como en Francia, C. Valverde, *Tratado de Derecho Civil Español*, 4ta ed., Valladolid, Ed. Talleres Tip. "Cuesta", 1937, T. III, pág. 284 y ss.; A. Gullón Ballesteros, *En torno a los llamados contratos en daño de tercero*, 20 Rev. Der. Not. 111 (1958); F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, T. III, pág. 386 y ss.; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 108 y ss.

■ La responsabilidad es de naturaleza extracontractual o cuasidelictual y se rige por sus términos. Puig Peña, *op. cit.* pág. 390. La responsabilidad de quien interfiere con el contrato es solidaria con la responsabilidad del contratante que lo inejecuta a sabiendas. Díez-Picazo y Gullón, *supra*, pág. 109. Si el tercero sabe que ha de producirse la lesión se incurre en responsabilidad. Ibíd. El pacto de exclusiva en circunstancias como la presente cabe dentro de los contornos expuestos. S. de 29 de octubre de 1955, núm. 131, 52 Juris. Civil 1539. La jurisprudencia española recoge las normas doctrinales reseñadas. S. de 4 de mayo de 1973, núm. 2291, Aranzadi, XL Repertorio de Jurisprudencia 1822.

■ A la luz de lo anterior resolvemos que el Art. 1802 del Código Civil de Puerto Rico permite, al igual que sus equivalentes en la legislación española y francesa, la acción por interferencia culposa con las obligaciones contractuales de terceros. La acción se aplica a pactos de exclusiva como el presente. Hay situaciones en las que no se da, mas ello ocurre mayormente cuando intereses públicos de alto rango lo impiden. No es este el caso para discutir las excepciones a la regla o figuras afines como la del contrato en daño de tercero. Señalamos más bien los elementos constitutivos de la acción, conforme las autoridades citadas.

En primer término, debe existir un contrato con el cual

interfiera un tercero. Si lo que se afecta es una expectativa o una relación económica provechosa sin que medie contrato, la acción no procede, aunque es posible que se incurra en responsabilidad bajo otros supuestos jurídicos.

En segundo lugar, debe mediar culpa. Adoptamos la posición mayoritaria de que basta a tal·efecto con que el perjudicado pruebe o presente hechos que permitan inferir que el tercero actuó intencionalmente, con conocimiento de la existencia del contrato.

■ El tercer elemento es que se ocasione un daño al actor y el cuarto, que ese daño sea consecuencia de la actuación culposa del tercero. El nexo causal necesario es entre el acto del tercero y su·efecto sobre el perjudicado. Es impertinente a estos efectos que el cocontratante del perjudicado haya tenido la intención de incumplir el contrato. Basta con que el tercero haya provocado o contribuido a la inejecución. En caso de concurrencia de culpas la responsabilidad es solidaria.

*Se ·expedirá el auto y se dictará sentencia para contestar la cuestión certificada en la afirmativa.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López·disintió sin opinión.