**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

97-30742

---

WILLIAM J. HUFFMASTER, ET AL

Plaintiffs,

HUFFMASTER & ASSOCIATES, INCORPORATED

Plaintiff/Appellant,

versus

EXXON COMPANY and CDI CORPORATION

Defendants/Appellees.

---

Appeal from the United States District Court
from the Middle District of Louisiana

March 17, 1999

Before HIGGINBOTHAM, PARKER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This appeal calls upon us to interpret a contract between Huffmaster & Associates ("HAI"), a staffing support company, and Exxon Company ("Exxon"). Under the contract HAI performed engineering and related services for Exxon with HAI's permanent and temporary staff support personnel. Exxon terminated HAI's right to perform services under the contract and entered into new contracts with different staffing support companies for performance of the same services. This litigation ensued. The district court granted summary judgment dismissing HAI's breach of contract claim against Exxon and dismissed, under Rule 12(b)(6), HAI's tortious

-1-

interference with contract claim against a competing staffing support company. We affirm.

I.

HAI provides personnel to perform both permanent and temporary engineering, clerical, and support services for companies in and around Baton Rouge, Louisiana. Beginning in 1975 HAI provided engineering and associated services for Exxon's refinery operations under a series of contracts. By 1995, 80% of HAI's workforce was dedicated to the performance of services for Exxon. The contract at issue in this case was entered into by HAI and Exxon on April 1, 1994. Under that contract HAI agreed to furnish, upon Exxon's request, engineering and associated services as described in Letters of Authorization issued by Exxon. HAI also agreed to provide its own supervision and other personnel necessary to perform such services. Exxon was not required by the contract to request services exclusively from HAI or to request any particular amount of services from HAI. In essence, Exxon agreed only to pay HAI for services performed in accordance with each Letter of Authorization or, in the absence of specific reimbursement terms therein, pursuant to Exhibit D of the contract entitled, "Payment Schedule, Reimbursable/Non Reimbursible Costs."

Prior to 1995, Exxon obtained performance of various services by temporary personnel from several companies, including CDI Corporation ("CDI"). In late 1992 and early 1993, CDI executives approached Bill Huffmaster, the owner of HAI, seeking to purchase

-2-

HAI. Huffmaster rejected CDI's offer.

Exxon maintains that by early 1995, it decided to reduce the number of companies providing it with staffing services. On January 16, 1995, Exxon informed HAI that after January 30 Exxon would no longer request clerical services from HAI. In a letter to HAI, Exxon stated that Olsten Staffing Services was to become Exxon's sole supplier of staff support and that Exxon anticipated that the bulk of HAI's former employees would be employed by Olsten for this purpose. Thereafter on February 6, 1995, Exxon informed HAI that Spectrum Engineering, Inc. would be providing the technical staffing services to Exxon; therefore, Exxon would no longer require the services of HAI in the technical area either. Exxon stated that Spectrum also would seek to "transition" or employ HAI's former employees. Spectrum Engineering, Inc. is a subsidiary of CDI.

Aggrieved by the termination of HAI's right to perform services for Exxon and the resulting loss of its business and employees, HAI, along with Huffmaster, commenced this litigation.

HAI and Huffmaster originally sued only Exxon in the Southern District of Texas for breach of contract, tortious interference with contract, and breach of the duty of good faith and fair dealing. After the action was transferred to the Middle District of Louisiana HAI and Huffmaster amended their complaint to include actions against CDI for tortious interference with contract.

The district court concluded that Louisiana law applied and dismissed plaintiffs' claims against Exxon for reach of contract

via summary judgment and against CDI for tortious interference with contract under Rule 12(b)(6).  Only HAI appealed.[1]

## II.

Under the Louisiana Civil Code, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."   LSA-C.C. Art. 1906. "Interpretation of a contract is the determination of the common intent of the parties." Id., Art. 2045.   "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Id., Art. 2046.   "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." Id., Art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." Id., Art. 2049.  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contact as a whole." Id., Art. 2050. "When the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that

---

[1]An appellate court reviews an order granting summary judgment de novo.  Montgomery v. Brookshire, 34 F.3d 291, 294 (5th Cir. 1994).  A dismissal of a complaint for a failure to state a claim for which relief can be granted under Rule 12(b)(6) is also reviewed by an appellate court de novo.  Khurana v. Innovative Health Care Systems, Inc., 130 F.3d 143, 147 (5th Cir. 1997).

situation alone." Id., Art. 2052.  "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties." Id., 2053.

Under the contract, Exxon had the right to specify and request the performance of services by HAI.[2]  Upon receiving such a request from Exxon, HAI had the right to perform and be compensated for the specified services.[3]

The contract does not state or imply that Exxon must obtain any service exclusively from HAI or that HAI has the exclusive right to perform any service for Exxon.  Accordingly, the contract provides for the creation of rights and obligations of the parties only in the event Exxon specifies and requests the performance of certain services by HAI.

The contract further provides for the modification or extinguishment of the obligations of the parties.  Specifically,

---

[2]  *See* Contract, Sec. 4. ["Scope"] A. "Whenever Exxon desires to have Contractor perform Services hereunder, Exxon shall furnish Contractor with a Letter of Authorization, which Letter shall describe the Services to be performed and authorize Contractor to proceed therewith.***"(Capitalizations omitted).

[3]  *See* Contract, Sec. 5. ["Payment and Invoicing"] A. ["Payment"]"As consideration for the timely and satisfactory performance and completion of Services by Contractor in accordance with the terms of this Contract, Exxon agrees to pay Contractor the Contract Price in accordance with (1) specific reimbursement terms as identified in each Letter of Authorization or (2) if no such reimbursement terms are contained in the applicable Letter(s) of Authorization, the attached Exhibit D attached hereto and made a part hereof shall constitute the payment basis.***" (Capitalizations omitted).

Sections 25 and 27 of the Contract provide as follows:

25. Assumption of the Services

CONTRACTOR agrees that if, in the opinion of EXXON, CONTRACTOR fails at any time during the performance of this CONTRACT to provide the labor, supervision, tools, equipment, or materials necessary for the prompt performance of the SERVICES herein contracted for, or should CONTRACTOR breach this CONTRACT in whole or in part or fail to use due diligence in the performance thereof, or should CONTRACTOR not be performing this CONTRACT in the manner herein provided, EXXON may, at its election and without prejudice to any other remedies available to it, take over and perform, or obtain another contractor to take over and perform, all or any part of the SERVICES then remaining unperformed. Should EXXON take over completion of the SERVICES, or obtain another contractor to do so, EXXON's sole obligation shall be to pay CONTRACTOR, upon completion of the SERVICES, subject to other provisions of the CONTRACT, either that percentage of any moneys due under the CONTACT which represents the percentage of the SERVICES completed by CONTRACTOR or the full CONTRACT price less all costs and expenses incurred by EXXON in completing the SERVICES, whichever is less.

\* \* \*

27. Termination

A.    EXXON may terminate, at any time and for any reason, any part of or all SERVICES by giving at least twenty four (24) hours' written notice to CONTRACTOR specifying the part of or all SERVICES to be terminated and the effective date of termination. CONTRACTOR shall cease work on said part of or all SERVICES on the effective date of termination but shall continue to prosecute any unterminated part of SERVICES.

B.    If any part of or all SERVICES are terminated, EXXON with respect to such SERVICES shall pay CONTRACTOR, pursuant to Exhibit B, only for SERVICES performed and obligations incurred prior to the effective date of termination and for such additional amounts directly related to SERVICES performed by CONTRACTOR in terminating, providing said SERVICES were authorized in advance by EXXON.

-6-

C. EXXON's sole liability to CONTRACTOR for termination shall be determined in accordance with this Article and EXXON shall not be liable for any other damages including, without limitation, loss of anticipated profits or reimbursement for SERVICES unperformed.

Interpreting each provision of the contract in light of its other provisions so that each is given the effect and meaning suggested by the contract as a whole, we conclude that Section 25 provides Exxon the remedy, for specified causes (viz., breach of contract, lack of diligent performance, lack of means of prompt performance, or improper manner of performance), to extinguish, in whole or in part, HAI's right to perform requested services, and further provides that, in such a case, HAI will be paid either on the basis of the percentage of the services completed by HAI or the full contract price less all costs and expenses incurred by Exxon in completing the services, whichever is less.

Section 27, interpreted in like manner, gives Exxon the right, without cause, to terminate HAI's right to perform any or all specified services by giving HAI at least 24 hours written notice of the services to be terminated and the effective date of termination. In the event of termination under Section 27, Exxon must compensate HAI for services performed and for certain obligations incurred prior to the effective date of termination. In essence, the contract calls for more favorable compensation of HAI in the event of termination without cause under Section 27 than in the case of extinguishment of obligations for cause under Section 25.

Consequently we disagree with HAI's contentions that the common intent of the parties was that Exxon could not terminate HAI's right to perform past and future requests for services under the contract except for cause as stated in Section 25, and that Exxon could not terminate, at will or without cause, HAI's right to perform past or future requests for specified services under Section 27 unless Exxon no longer had a need for the particular services designated. HAI disregards the clear and unambiguous words of the contract and reads into it provisions that the parties did not agree upon. Section 27 unquestionably authorizes Exxon to "terminate, at any time and for any reason," i.e., at will or without cause, "any part of or all SERVICES []." That section plainly says Exxon may terminate performance of services by HAI "for any reason" and does not require that Exxon's right to so terminate shall depend on whether or not Exxon needs the services. Further, Section 25 lucidly provides that Exxon may elect to extinguish HAI's right to perform services for the causes stated in that section "without prejudice to any other remedies available to it." This clause, the co-existence of Section 27 that permits termination of services by Exxon at will, and the absence of any statement contradictory thereto in Section 25, clearly demonstrate the parties' common intent that Exxon should be able to extinguish HAI's right to perform services "for any reason" under Section 27. HAI's proffered interpretation, moreover, adds to and bends the meaning of the words of the contract so as to provide itself the exclusive right to perform certain services for Exxon

-8-

extinguishable only for the causes stated in the contract. However, a reading of the contract as a whole which renders each of its provisions effective plainly demonstrates that HAI was merely granted the right to perform services as specified and demanded by Exxon, and that HAI's right was subject to extinguishment by Exxon either at will or for the causes stated by the contract.

## III.

Beginning with Kline v. Eubanks, 109 La. 241, 33 So. 211 (1902), the Louisiana courts refused to recognize the tort of intentional interference with contractual relations. In 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La. 1989), however, the Louisiana Supreme Court overruled Kline v. Eubanks, and held that all "previous expressions barring absolutely any action based on a tortious interference with contract are annulled insofar as they conflict with this opinion." The 9 to 5 Fashions Court gave many reasons for its decision to overrule its previous cases:(1) "[A] delictual rule such as Kline v. Eubanks that flatly and without good reason deprives an innocent person of any remedy for damage to his contract right caused intentionally and improperly by a corporate official is discordant with the fundamental civil law principle that obliges a person to repair damage caused another by his fault. La.Civ.Code art. 2315." Id., at 233-234; (2) Louisiana stood alone among American states and in opposition to the weight of opinion in other civil law jurisdictions in refusing to

recognize the tort; (3) The common law authorities relied upon by Kline v. Eubanks had been abandoned by all Anglo-American jurisdictions; (4) The expression of the Kline court that article 2315 must be limited to dangers which were known to the drafters of the Code at the time it was drafted was incorrect; (5) Kline and its progeny had been thoroughly criticized by doctrinal commentators.

The 9 to 5 Fashions Court specifically recognized only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person and disavowed any intention to adopt whole and undigested the fully expanded common law doctrine of interference with contract.

Because the Louisiana Supreme Court has not revisited the tort of intentional interference with contract since 9 to 5, and the Louisiana courts of appeal opinions fail to provide consistent guidance, HAI urges us to either make an Erie-guess as to whether the Louisiana Supreme Court would decide that HAI has stated a tortious interference with contract cause of action or to certify that question to the Louisiana Supreme Court. We need not obtain a definitive answer to that question, however, to dispose of the present case.

Assuming arguendo that the Louisiana Supreme Court would, as HAI argues, adopt the majority or contemporary American view, HAI still would not succeed in the present case. Under that view, "interference with employment or other contracts terminable at will

is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect." Prosser and Keeton on Torts, §129, at 995-996 (5[th] Ed. 1984); See also, 2 Harper, James and Gray, The Law of Torts, § 6.7, at 311 (2[nd] Ed. 1986). The majority view, however, also includes a privilege of interference within the bounds of proper and legitimate business competition. Section 768 of the Restatement (Second) of Torts (1979) sets forth the terms and conditions of the privilege with precision as follows[4]:

> § 768. Competition as Proper or Improper Interference
>
> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>> (a) the relation concerns a matter involved in the competition between the actor and the other and
>> (b) the actor does not employ wrongful means and
>> (c) his action does not create or continue an unlawful restraint of trade and
>> (d) his purpose is at least in part to advance his interest in competing

---

[4]Cases adopting § 768 or some version of the privilege include Ocean State Physicians Health Plan v. Blue Cross & Blue Shield of Rhode Island, 883 F.2d 1101, 1113 (1st Cir. 1989), *cert. denied* 494 U.S. 1027 (1990); Waldrep Brothers Beauty Supply, Incorporated. v. Wynn Beauty Supply Company, Incorporated, 992 F.2d 59, 63 (4th Cir. 1993); C.E. Services, Inc. v. Control Data Corp., 759 F.2d 1241, 1248, 1249 (5th Cir.), *cert. denied* 474 U.S. 1037 (1985); Tata Consultancy Services v. Systems International, Inc., 31 F.3d 416, 424-25 (6th Cir. 1994); A-Abart Electric Supply, Incorporated v. Emerson Electric Company, 956 F.2d 1399, 1405 (7th Cir.), *cert. denied* 506 U.S. 867 (1992); Sawheny v. Pioneer Hi-Bred International, Inc., 93 F.3d 1401, 1409 (8th Cir. 1996); Los Angeles Land Co. v. Brunswick Corporation, 6 F.3d 1422, 1430 (9th Cir. 1993), *cert. denied* 510 U.S. 1197 (1994); Occusafe, Inc. v. EG&G Rocky Flats, Inc., 54 F.3d 618, 619, 622 (10th Cir. 1995).

> with the other.
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

See also, Prosser and Keeton, supra, at 996 ("Thus a contract at will is usually not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means is used, as where one employer hires away employees of another whose contract rights are terminable at will."); Harper, James and Gray, supra, at 312.

We do not believe that the Louisiana Supreme Court would recognize the contemporary or majority version of the intentional interference with contractual relations action without also recognizing and applying the privilege of legitimate and proper business competition that accompanies that action. Accordingly, under the facts alleged in HAI's petition, CDI is protected by the privilege from liability for interference with contract. Exxon had the right to terminate its contract with HAI at will: HAI's employees had the right to terminate their employment at will; CDI's interference with the contracts at will was based on legitimate business purposes; and there was no allegation of restraint of trade or wrongful means.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.